ARNOLDO CASILLAS, ESQ., SBN 158519
DENISSE O. GASTÉLUM, ESQ., SBN 282771
**CASILLAS & ASSOCIATES**
3777 Long Beach Blvd., Third Floor
Long Beach, CA 90807
Tel:  (562) 203-3030
Fax: (323) 297-2833
Email: acasillas@casillaslegal.com
        dgastelum@casillaslegal.com

Attorneys for Plaintiffs, ESTATE OF DANIEL HERNANDEZ, by and through successors in interest, Manuel Hernandez and Maria Hernandez; MANUEL HERNANDEZ, individually; MARIA HERNANDEZ, individually

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF DANIEL HERNANDEZ, by and through successors in interest, Manuel Hernandez and Maria Hernandez; MANUEL HERNANDEZ, individually; MARIA HERNANDEZ, individually, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT; TONI MCBRIDE; and DOES 1 to 10, <br><br> Defendants. | **CASE NO.** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. Excessive Force/Unreasonable Seizure (42 U.S.C. § 1983) <br> 2. Municipal Liability for Unconstitutional Customs and Practices (42 U.S.C. § 1983) <br> 3. Interference with Familial Integrity Substantive Due Process Violation (42 U.S.C. § 1983) <br> 4. Assault & Battery <br> 5. Wrongful Death <br> 6. Civil Rights Violations (Cal. Civ. Code §52.1) <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs ESTATE OF DANIEL HERNANDEZ, by and through successors in interest, Manuel Hernandez and Maria Hernandez, MANUEL HERNANDEZ, individually, and MARIA HERNANDEZ, individually, and allege as follows:

## INTRODUCTION

1.     This civil rights action seeks to establish the true and unequivocal facts surrounding the shooting and killing of Daniel Hernandez by Officer Toni McBride of the Los Angeles Police Department. This civil rights action further seeks to establish the violations of fundamental rights under the United States Constitution in connection with the killing of Daniel Hernandez on or about April 22, 2020.

2.     Daniel Hernandez was the loving son of Manuel and Maria Hernandez. He was just 38 years old at the time of his death.  He shared a deep love with his parents and his siblings.  He will always be remembered for his infectious laugh and his sense of humor.   Daniel Hernandez's death has been a profound and unimaginable loss to his family, the present Plaintiffs.

3.     Without justification or cause, Defendant Toni McBride shot and killed Daniel Hernandez.  This shooting was absolutely unjustified, and it is Plaintiffs' goal to show that the killing of Daniel Hernandez was a senseless and unwarranted act of police abuse.

## JURISDICTION AND VENUE

4.     This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fourth and Fourteenth Amendments of the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in the City of Los Angeles, California.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

6.     With respect to Plaintiffs' supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction over such claims as they arise from the same facts and circumstances which underlie the federal claims.

## PARTIES

7.     Decedent Daniel Hernandez was a resident of Los Angeles, California.

8.     The claims made by the ESTATE OF DANIEL HERNANDEZ, are brought by Manuel Hernandez and Maria Hernandez, the successors in interest to the Estate of Daniel Hernandez pursuant to California Code of Civil Procedure § 377.32.

9.     Plaintiffs MANUEL HERNANDEZ and MARIA HERNANDEZ are and were, at all times relevant hereto, the natural father and natural mother of decedent Daniel Hernandez.

10.     Defendant CITY OF LOS ANGELES (hereinafter "LOS ANGELES") is and was, at all relevant times hereto, a public entity, duly organized and existing under and by virtue of the laws of the State of California, with the capacity to sue and be sued.  Defendant LOS ANGELES is responsible for the actions, omissions, policies, procedures, practices and customs of its various agents and agencies.  LOS ANGELES owns, operates, manages, directs and controls Defendant LOS ANGELES POLICE DEPARTMENT (hereinafter also "LAPD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant LOS ANGELES was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including LAPD employees, complied with the laws and the Constitutions of the United States and of the State of California.

11.     Defendant Officer TONI MCBRIDE (hereinafter also "MCBRIDE") is a police officer working for the Los Angeles Police Department.  Defendant TONI MCBRIDE is sued in her official and individual capacity.  At all times relevant to the present action, Defendant TONI MCBRIDE was acting under the color of law, to wit, under the color of the ordinances, regulations, policies, customs, and usages of

1  Defendant LOS ANGELES, as well as under the color of the statutes and regulations
2  of the State of California.

3       12.     At all relevant times, each of DOES 1 through 10 were employees of the
4  LAPD. At all times relevant herein, each of DOES 1 through 10 was an employee
5  and/or agent of Defendant LOS ANGELES and he or she acted under color of law, to
6  wit, under the color of the statutes, ordinances, regulations, policies, customs, and
7  usages of Defendant LOS ANGELES and the LAPD, as well as under the color of the
8  statutes and regulations of the State of California.

9       13.     At all relevant times, each of the Defendants DOES 1 through 10 was
10  acting within his or her capacity as an employee, agent, representative and/or servant
11  of LOS ANGELES and is sued in their individual capacities.

12       14.     On information and belief, at all relevant times, Defendant TONI
13  MCBRIDE, and DOES 1 through 10, inclusive, were residents of the City of Los
14  Angeles, California.

15       15.     The true names of Defendants DOES 1 through 10, inclusive, are
16  unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names.
17  Plaintiffs will seek leave to amend this Complaint to show the true names and
18  capacities of these Defendants when they have been ascertained. Each of the
19  fictitiously named Defendants is responsible in some manner for the conduct and
20  liabilities alleged herein.

21       16.     Defendants DOES 6 through 10 were also duly appointed police officers,
22  sergeants, lieutenants, detectives, or other supervisors, officials, executives and/or
23  policymakers of LAPD, a department and subdivision of Defendant LOS ANGELES,
24  and at all times mentioned herein said Defendants were acting in the course and scope
25  of their employment with Defendant LOS ANGELES, which is liable under the
26  doctrine of *respondeat superior* pursuant to California Government Code § 815.2.

27       17.     Defendants DOES 1 through 3 are supervisorial employees for
28  Defendant LOS ANGELES who were acting under color of law within the course and

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

scope of their duties as police officers for Defendant LOS ANGELES. Defendants DOES 1 through 3 were acting with the complete authority and ratification of their principal, Defendant LOS ANGELES.

18.     Defendants DOES 4 through 10 are managerial, supervisorial, and policymaking employees of Defendant LOS ANGELES, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for Defendant LOS ANGELES. Defendants DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant LOS ANGELES.

19.     Each of the Defendants caused and is responsible for the unlawful conduct and resulting by, inter alia, personally participating in the conduct, or acting jointly and in concert with others who did so; by authorizing, acquiescing or failing to take action to prevent the unlawful conduct; by promulgating policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to Plaintiffs' rights, to initiate and maintain adequate supervision and/or training; and, by ratifying the unlawful conduct that occurred by agents and peace officers under their direction and control.  Whenever and wherever reference is made in this Complaint to any act by a Defendant, such allegation and reference shall also be deemed to mean the acts and failures to act of each Defendant individually, jointly and severally. They are sued in their individual and official capacities and in some manner are responsible for the acts and omissions alleged herein. Plaintiffs will ask leave of this Court to amend this Complaint to allege such name and responsibility when that information is ascertained.  Each of the Defendants is the agent of the other.

///

///

///

///

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

20.    Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

21.    On or about April 22, 2020, at approximately 5:37 p.m., Daniel Hernandez was involved in a multiple-vehicle traffic collision  at the intersection of San Pedro Street and 32nd Street in the south-central historic district of Los Angeles. Bystanders called 9-1-1 to render help to those severely injured in the collision, including Daniel Hernandez.

22.    Police officers from the Los Angeles Police Department Newton Division responded to the scene of the collision.  One of the responding police officers was 23-year-old TONI MCBRIDE—a self-proclaimed public figure on social media showcasing her love of guns as well as her firearms and tactical skills in shooting competitions.

23.    Without cause, Defendant TONI MCBRIDE used unlawful and excessive force against Daniel Hernandez shooting him multiple times.  After her initial volley of gunfire, Defendant TONI MCBRIDE continued to shoot at Daniel Hernandez even after he fell to the ground in a fetal position.  The force used was unreasonable and unjustified under the law. Daniel Hernandez was struck by the gunshot and eventually died from the gunshot injuries.

24.    The shooting and killing of Daniel Hernandez was without provocation, cause or necessity as Daniel Hernandez did not pose a threat or represent a danger of any nature to anyone, including Defendant TONI MCBRIDE, at the time of the shooting.  Daniel Hernandez was at least 30 feet away from Defendant TONI MCBRIDE at the time she fired the initial shots.  Defendant TONI MCBRIDE continued shooting Daniel Hernandez even as he lay on the ground in a fetal position. Each and every round fired by MCBRIDE was unnecessary and the shooting of each shot constituted the use of excessive force. Accordingly, the shooting and killing of

Daniel Hernandez was unjustified and this use of force was unwarranted and excessive under the circumstances.

25.   Defendants LOS ANGELES and the LAPD were long aware of the propensity of their police officers, including Defendant TONI MCBRIDE, to callously and recklessly use excessive force against members of the public, particularly targeting minority groups, and to engage in deceitful misconduct.  The following incidents illustrate the use of excessive deadly force, all of which are pursuant to these unconstitutional customs, policies and practices of the LAPD:

a.   On February 3, 2007, six LAPD officers used excessive force against Mauricio Cornejo when the officers severely beat Mauricio Cornejo after he fled a traffic stop.  At the time of the beating, Mauricio Cornejo was unarmed and posed no threat of death or serious bodily injury to the officers or to anyone else.  The LAPD officers were not disciplined or required to undergo any retraining as a result of their use of deadly force against Mauricio Cornejo.  The City of Los Angeles concluded that the use of force against Mauricio Cornejo was justified and that it was within and consistent with LAPD policy.

b.   On January 14, 2011, LAPD Officer Aaron Goff used excessive force when he shot and killed Reginald Doucet, Jr. At the time of the shooting, Reginald Doucet, Jr. was unarmed, naked and experiencing a psychotic episode. Officer Goff shot Reginald Doucet, Jr. twice in the back. LAPD Officer Goff was not disciplined or required to undergo any retraining as a result of his use of deadly force against Reginald Doucet, Jr.  The City of Los Angeles concluded that the use of force against Reginald Doucet, Jr. was justified and that it was within and consistent with LAPD policy.

c.   On May 10, 2011, LAPD Officer Arthur Gamboa used excessive force when he shot and killed Anthony Garrett. Officer Gamboa shot Arthur Garrett twice in the back.  Although the Board of Police Commissioners

determined that the pre-shooting tactics and shooting were outside department policy, Officer Gamboa was not disciplined or required to undergo any retraining as a result of his use of excessive deadly force against Arthur Garrett.

d.  On July 22, 2011, LAPD Officer Fernando Ortega used excessive force against Maria del Carmen Ruvalcaba when he shot and killed Maria del Carmen Ruvalcaba in her home. At the time that Officer Ortega fired, Maria del Carmen Ruvalcaba was unarmed and posed no threat of death or serious bodily injury to the shooting officer, to any of the other officers on scene, or to anyone else. Officer Ortega was not disciplined or required to undergo any retraining as a result of his use of deadly force against Maria del Carmen Ruvalcaba. The City of Los Angeles concluded that the shooting of Maria del Carmen Ruvalcaba by Officer Ortega was justified and that it was within and consistent with LAPD policy.

e.  On February 2, 2013, LAPD officers used excessive force against Sergio Pina. Sergio Pina was shot multiple times although he was unarmed and posed no threat of death or serious bodily injury to the officers or any other person at the time that he was shot. None of the officers involved in the shooting of Sergio Pina were disciplined or required to undergo any re-training as a result of their use of excessive deadly force against Sergio Pina.  The City of Los Angeles declared the shooting of Sergio Pina was justified and that it was within and consistent with LAPD policy.

f.  On March 19, 2013, LAPD Officers Gerald Adams, Houston Stauber, Alfredo Morales and Shaun Hillman used excessive force against David Martinez when they shot him multiple times, killing him. At the time of the officers' use of excessive deadly force, David Martinez was

1  unarmed, was running away from the officers, and posed no threat of

2  death or serious bodily injury to the officers or any other person. None

3  of the officers involved in the shooting of David Martinez were

4  disciplined or required to undergo any re-training as a result of their use

5  of excessive deadly force. The City of Los Angeles declared the

6  shooting of David Martinez to be justified and that it was within and

7  consistent with LAPD policy.

8  g.  On March 5, 2015, LAPD Officer Brian Van Gorden used excessive

9  force against Sergio Navas when he shot and killed Sergio Navas.

10  Officer Van Gorden and Sergio Navas were engaged in a vehicle pursuit

11  which ended in Officer Van Gorden shooting and killing Sergio Navas.

12  At the time that Officer Van Gorden fired, Sergio Navas was unarmed

13  and posed no threat of death or serious bodily injury to the shooting

14  officer, to any of the other officers on scene, or to anyone else. The

15  Board of Police Commissioners determined that the pre-shooting tactics

16  and shooting were outside department policy.

17  h.  On May 5, 2015, LAPD Officer Clifford Proctor used excessive force

18  against Brendon Glenn when he shot and killed Brendon Glenn.  Officer

19  Proctor and Brendon Glenn were engaged in an altercation which ended

20  in Officer Proctor shooting and killing Brendon Glenn. At the time that

21  Officer Proctor fired, Brendon Glenn was unarmed and posed no threat

22  of death or serious bodily injury to the shooting officer, to any of the

23  other officers on scene, or to anyone else.  The Board of Police

24  Commissioners determined that the pre-shooting tactics and shooting

25  were outside department policy.

26  i.  On May 6, 2015, LAPD Officer John Baker used excessive force against

27  an unidentified homeless man when he shot and killed him.  At the time

28  that Officer Baker fired, the unidentified homeless man posed no threat

9

of death or serious bodily injury to the shooting officer, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy, and that the unintentional discharge was negligent and warranted a finding of administrative disapproval.

j.     On July 9, 2015, LAPD Officer Stephan Shuff used excessive force against Neil Peter, a 38-year-old male, when he shot and killed him. At the time that Officer Shuff fired, Neil Peter posed no threat of death or serious bodily injury to the shooting officer, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics and the shooting were outside department policy

k.     On September 15, 2015, LAPD Officers Patricia Barajas and Brady Cuellar used excessive force against Florencio Chaidez, a 32-year-old male, when they shot and killed him.  At the time of the shooting, Florencio Chaidez posed no threat of death or serious bodily injury to the shooting officers, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy.

l.     On October 3, 2015, LAPD Officers Andrew Hacoupian and Zackary Goldstein used excessive force against James Byrd, a 46-year-old male, when they shot and killed him.  At the time of the shooting,  James Byrd posed no threat of death or serious bodily injury to the officers, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the shooting was outside department policy.

m.     On February 6, 2016,  LAPD Officers Josue Merida and Jeremy Wagner used excessive force against Jose Mendez, a 16-year-old boy, when they

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    shot and killed him.  At the time of the shooting, Jose Mendez posed no

2    threat of death or serious bodily injury to the shooting officers, to any of

3    the other officers on scene, or to anyone else. The Board of Police

4    Commissioners determined that the pre-shooting tactics were outside

5    department policy.

6    n.    On February 14, 2016, LAPD Officers used excessive force when they

7    shot and killed Rammy Sam Jaradat, a 26-year-old male.  At the time of

8    the shooting, Rammy Sam Jaradat posed no threat of death or serious

9    bodily injury to the shooting officers, to any of the other officers on

10   scene, or to anyone else. The Board of Police Commissioners

11   determined that the pre-shooting tactics were outside department policy.

12   o.    On April 10, 2016,  LAPD Officers used excessive force when they shot

13   and killed Arturo Valdez, a 27-year-old male.  At the time of the

14   shooting, Arturo Valdez posed no threat of death or serious bodily injury

15   to the shooting officers, to any of the other officers on scene, or to

16   anyone else. The Board of Police Commissioners determined that the

17   pre-shooting tactics were outside department policy.

18   p.    On April 30, 2016,  LAPD Officers Jesse Murphy and David Lagesse

19   used excessive force when they shot and killed Jose Marion, a 28-year-

20   old male.  At the time of the shooting, Jose Marion posed no threat of

21   death or serious bodily injury to the shooting officers, to any of the other

22   officers on scene, or to anyone else. The Board of Police Commissioners

23   determined that the pre-shooting tactics were outside department policy.

24   q.    On June 10, 2016,  LAPD Officer Charles Kumlander  used excessive

25   force when he shot and killed Keith Myron Bursey Jr., a 31-year-old

26   male.  At the time Officer Kumlander fired, Keith Myron Bursey Jr.

27   posed no threat of death or serious bodily injury to the shooting officer,

28   to any of the other officers on scene, or to anyone else. The Board of

1   Police Commissioners determined that the pre-shooting tactics were
2   outside department policy.

3   r.      On July 25, 2016,  LAPD Officers Francisco Zaragoza, Joseph Chavez
4           and Isaac Fernandez used excessive force when they shot and killed
5           Robert Risher, an 18-year-old male.  At the time of the shooting, Robert
6           Risher posed no threat of death or serious bodily injury to the shooting
7           officers, to any of the other officers on scene, or to anyone else. The
8           Board of Police Commissioners determined that the pre-shooting tactics
9           were outside department policy.

10  s.      On August 9, 2016,  LAPD Officer Eden Medina used excessive force
11          when he shot and killed Jesse Romero, a 14-year-old boy.  At the time of
12          the shooting, the boy posed no threat of death or serious bodily injury to
13          the shooting officer, to any of the other officers on scene, or to anyone
14          else. The Board of Police Commissioners determined that the pre-
15          shooting tactics were outside department policy.

16  t.      On August 19, 2016,  LAPD Officers Jonathan Johnson and Jennifer
17          Nodes used excessive force when they shot and killed Marcelo Luna, a
18          47-year-old male.  At the time of the shooting, Marcelo Luna posed no
19          threat of death or serious bodily injury to the shooting officers, to any of
20          the other officers on scene, or to anyone else. The Board of Police
21          Commissioners determined that the pre-shooting tactics were outside
22          department policy.

23  u.      On October 1, 2016,  LAPD Officer Leovardo Guillen used excessive
24          force when he shot and killed Carnell Snell, Jr., an 18-year-old male.  At
25          the time Officer Guillen fired, Carnell Snell, Jr. posed no threat of death
26          or serious bodily injury to the shooting officer, to any of the other
27          officers on scene, or to anyone else. The Board of Police Commissioners
28          determined that the pre-shooting tactics were outside department policy.

v.     On October 2, 2016,  LAPD Officer Ian Chessum used excessive force when he shot and killed Daniel Perez, a 16-year-old boy.  At the time Officer Chessum fired, the boy posed no threat of death or serious bodily injury to the shooting officer, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy.

w.     On November 28, 2016,  LAPD Officers used excessive force when they shot and killed an unidentified 23-year-old male. At the time of the shooting, the male posed no threat of death or serious bodily injury to the shooting officers, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy.

x.     In 2016, the Board of Police Commissioners required the LAPD to reevaluate its excessive force policies in an effort to reduce the number of police shooting by revamping department policies, revising training and emphasizing the use of less-lethal devices.

y.     On March 4, 2017,  LAPD Officers Charles Garcia and Ghanshym Patel used excessive force when they shot and killed Alejandro Mendez, a 70-year-old elderly man. At the time of the shooting, Alejandro Mendez posed no threat of death or serious bodily injury to the shooting officers, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics and the shooting were outside department policy.

z.     On March 25, 2017,  LAPD Officers Ivan Garcia, Benjamin Hearst, Nicholas Becerra, Elieser Domingo used excessive force when they shot and killed Juan Avila, a 35-year-old male. At the time of the shooting, Juan Avila posed no threat of death or serious bodily injury to the shooting officers, to any of the other officers on scene, or to anyone else.

1          The Board of Police Commissioners determined that the pre-shooting

2          tactics were outside department policy.

3    aa.   On July 27, 2017,  LAPD Officer Edward Agdeppa used excessive force

4          when he shot and killed Jerauld Hammond, a 46-year-old male. At the

5          time Officer Agdeppa fired, Jerauld Hammond posed no threat of death

6          or serious bodily injury to the shooting officer, to any of the other

7          officers on scene, or to anyone else. The Board of Police Commissioners

8          determined that the pre-shooting tactics were outside department policy.

9    bb.   On December 30, 2017,  LAPD Officers Alvaro Carlos, Mathew

10         Matzkin, Steve Norris, and Peter Tulagan used excessive force when

11         they shot and killed Oscar Sandoval, a 39-year-old male. At the time of

12         the shooting, Oscar Sandoval posed no threat of death or serious bodily

13         injury to the shooting officers, to any of the other officers on scene, or to

14         anyone else. The Board of Police Commissioners determined that the

15         pre-shooting tactics were outside department policy.

16   cc.   On January 14, 2018,  LAPD Officer Edward Artiaga used excessive

17         force against Christian Escobedo, a 22-year-old male, when he shot and

18         killed him. At the time Officer Artiaga fired, Christian Escobedo posed

19         no threat of death or serious bodily injury to the shooting officer, to any

20         of the other officers on scene, or to anyone else. The Board of Police

21         Commissioners determined that the pre-shooting tactics were outside

22         department policy.

23   dd.   On February 25, 2018,  LAPD Officers shot and killed an unidentified

24         32-year-old male. At the time of the shooting, the male posed no threat

25         of death or serious bodily injury to the shooting officers, to any of the

26         other officers on scene, or to anyone else. The Board of Police

27         Commissioners determined that the pre-shooting tactics were outside

28         department policy.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

ee.  On August 7, 2018,  LAPD Officers James Muniz and Melchor Oronez used excessive force against Santos Nunez-Garcia, a 70-year-old elderly man, when they shot and killed him. At the time of the shooting, the elderly man posed no threat of death or serious bodily injury to the shooting officers, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy.

ff.  On October 29, 2018,  LAPD Officers used excessive force when they shot and killed Albert Ramon Dorsey, a 30-year-old male. At the time of the shooting, Albert Ramon Dorsey posed no threat of death or serious bodily injury to the shooting officers, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy.

gg.  On April 14, 2019,  LAPD Officers Jaime Luna and Bradley Nielson used excessive force against William Crawford, a 47-year-old male, when they shot and killed him. At the time of the shooting, William Crawford posed no threat of death or serious bodily injury to the shooting officers, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy.

26.  Defendants LOS ANGELES and LAPD were aware that Defendant TONI MCBRIDE had racist and extremist tendencies and beliefs. Defendant TONI MCBRIDE regularly attended and was an instructor at shooting academies and firearms competitions whose founders held extremist, homophobic, racist and separatist views. Defendant TONI MCBRIDE wrote and blogged about her affiliation with these academies and firearms competitions. Defendant TONI MCBRIDE bought and read books which contained racist, separatist and extremist musings and commentary. Defendant MCBRIDE was a regular contributor to on-line shooting and

15

firearm tactics magazines, blogs and other electronic forums promoting policer

officer use of firearms both on and off-duty.

## FIRST CLAIM FOR RELIEF

### Excessive Force/Unreasonable Seizure

### 42 U.S.C. § 1983

### As Against Defendants TONI MCBRIDE

### and DOES 1 through 10

27.     Plaintiff ESTATE OF DANIEL HERNANDEZ realleges and incorporates the foregoing paragraphs as if set forth herein.

28.     Defendant TONI MCBRIDE's actions described herein violated Daniel Hernandez's rights under the Fourth Amendment to the United States Constitution incorporated and made applicable to states and municipalities by the Due Process Clause of the Fourteenth Amendment, by subjecting Daniel Hernandez to unreasonable searches and seizures of his person.

29.     At the time Daniel Hernandez was shot and killed, he was not engaging in any assaultive or threatening conduct. Under the totality of the relevant circumstances that existed, Daniel Hernandez posed no danger or threat to Defendant TONI MCBRIDE, or anyone else. The shooting and killing of Daniel Hernandez was unreasonable under the circumstances in every respect.

30.     These actions violated Daniel Hernandez's right to be free from unreasonable searches and seizures as guaranteed under the Fourth Amendment to the United States Constitution.

31.     The violation of Daniel Hernandez's Fourth Amendment rights occurred pursuant to a policy, custom, or practice, maintained by LOS ANGELES of subjecting private citizens to unreasonable searches and seizures in violation of the Fourth Amendment to the United States.

///

///

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

32.     Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

33.     After being shot by Defendant TONI MCBRIDE, and/or DOES 1 through 10, Daniel Hernandez endured great physical and emotional pain and suffering.

34.     Accordingly, Defendant TONI MCBRIDE and defendants DOES 1 through 10 are liable to Plaintiff for compensatory damages pursuant to 42 U.S.C. § 1983.

35.     The unauthorized, unwarranted killing of Daniel Hernandez was willful and done with a deliberate disregard for the rights and safety of Daniel Hernandez, and therefore warrants the imposition of punitive damages as to Defendants TONI MCBRIDE and DOES 1 through 10.

## SECOND CLAIM FOR RELIEF
### Municipal Liability for Unconstitutional Customs and Practices
### 42 U.S.C. § 1983
### As Against Defendant CITY OF LOS ANGELES,
### LOS ANGELES POLICE DEPARTMENT and DOES 1 through 10

36.     Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

37.     On and before April 22, 2020, and prior to the killing of Daniel Hernandez, Defendants LOS ANGELES, LAPD and Does 1 through 10, and each of them, were aware that LAPD police officers, including Defendant TONI MCBRIDE, had engaged in a custom and practice of callous and reckless use of firearms and other misconduct, as summarized in the paragraphs above.

38.     Defendants LOS ANGELES, LAPD and Does 1 through 10, and each of them, acting with deliberate indifference to the rights and liberties of the public in

general, and of the present Plaintiffs, and of persons in Daniel Hernandez's class, situation and comparable position in particular, knowingly maintained, enforced and applied customs and practices of:

a. Encouraging, accommodating, or ratifying the shooting of residents;

b. Encouraging, accommodating, or ratifying the use of excessive and unreasonable force, including deadly force;

c. Encouraging, accommodating, or facilitating a "code of silence" among LAPD officers/supervisors, pursuant to which false reports were generated and excessive and unreasonable force was covered up;

d. Employing and retraining, as police officers and other personnel, including individuals such as Defendant TONI MCBRIDE, who said Defendants knew or reasonably should have known had dangerous propensities for abusing her authority and for mistreating members of the public;

e. Inadequately supervising, training, and disciplining LAPD police officers, including Defendant TONI MCBRIDE, who said Defendants knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

f. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling intentional misconduct by officers;

g. Assigning police officers with known histories of misconduct, including criminal conduct, in accord with LAPD custom of assigning these police officers to come into contact with members of the public;

h. Ratifying wrongful conduct by police officers and supervisors which result in serious injuries and death to members of the public, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct; and

i.   Failing to discipline, investigate and take corrective actions against LAPD police officers for misconduct, including, but not limited to, unlawful detention, excessive force and false reports.

39.   By reason of the aforementioned customs and practices, Plaintiffs were severely injured and subjected to pain and suffering as alleged above in the First Claim for Relief.

40.   Defendants LOS ANGELES, LAPD and Does 1 through 10, with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above these Defendants condoned, tolerated and through actions and inactions thereby ratified such customs and practices.  Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs and other individuals similarly situated.

41.   Plaintiffs are informed and believe and thereon allege that Defendant TONI MCBRIDE had a history and propensity for acts of the nature complained of herein and manifested such propensity prior to and during her employment and/or agency with Defendant LOS ANGELES. Plaintiffs are further informed and believe and thereon allege that Defendants LOS ANGELES, LAPD, and Does 1through 10, knew, or in the exercise of reasonable care should have known, of such prior history and propensity at the time such individuals were hired and/or during the time of their employment. These Defendants' disregard of this knowledge and/or failure to adequately investigate and discover and correct such facts caused the violation of Plaintiffs' constitutional rights.

42.   The policies, practices, and customs implemented and maintained and still tolerated by Defendants LOS ANGELES, LAPD and Does 1 through 10, and each of them, were affirmatively linked to and were a significantly influential force behind the injuries of Plaintiffs.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

43.     By reason of the aforementioned acts and omissions, Daniel Hernandez was shot and killed by Defendant TONI MCBRIDE.

44.     Accordingly, Defendant LOS ANGELES is liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

## THIRD CLAIM FOR RELIEF

**Interference with Familial Integrity**

**Substantive Due Process Violation**

**42 U.S.C. § 1983**

**As Against Defendants CITY OF LOS ANGELES, LOS ANGELES**

**POLICE DEPARTMENT, TONI MCBRIDE,**

**and DOE Defendants 1 through 10**

45.     Plaintiffs MANUEL HERNANDEZ and MARIA HERNANDEZ reallege and incorporate the foregoing paragraphs as if set forth herein.

46.     The substantive due process clause of the Fourteenth Amendment to the United States Constitution guarantees all persons the right to be free from unlawful state interference with their familial relations. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

47.     On or about April 22, 2020, at approximately 5:37 p.m., Daniel Hernandez was involved in a multiple-vehicle traffic collision  at the intersection of San Pedro Street and 32nd Street in the south-central historic district of Los Angeles. Bystanders called 9-1-1 to render help to those severely injured in the collision, including Daniel Hernandez.  Police officers from the Los Angeles Police Department Newton Division responded to the scene of the collision.  One of the responding police officers was 23-year-old TONI MCBRIDE—a self-proclaimed public figure on social media showcasing her love of guns in shooting competitions. Without cause, Defendant TONI MCBRIDE used unlawful and excessive force against Daniel Hernandez shooting him multiple times.  Defendant TONI MCBRIDE continued to shoot at Daniel Hernandez even once he fell to the ground in a fetal

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   position.  The force used was unreasonable and unjustified under the law. Daniel

2   Hernandez died from the injuries.

3       48.    As alleged above, the shooting and killing of Daniel Hernandez was

4   unreasonable under the circumstances of the encounter between Daniel Hernandez

5   and Defendant TONI MCBRIDE.  As such, the shooting and killing of Daniel

6   Hernandez violated the constitutional limits on police use of deadly force in violation

7   of the Fourth Amendment's limits on unreasonable seizures.

8       49.    At the same time, the shooting and killing of Daniel Hernandez by

9   Defendant TONI MCBRIDE violated the rights of Plaintiffs MANUEL

10   HERNANDEZ and MARIA HERNANDEZ to be free from police interference in

11   their relationship with Daniel Hernandez.

12       50.    The unreasonable conduct of Defendant TONI MCBRIDE was the direct

13   and proximate cause of the death of Daniel Hernandez. As a result of the

14   unreasonable conduct of Defendant TONI MCBRIDE, Plaintiffs lost Daniel

15   Hernandez, as well as his love, affection, society and moral support.

16       51.    The unreasonable conduct of these Defendants was willful and done

17   with a deliberate disregard for the rights and safety of Daniel Hernandez and the

18   present Plaintiffs and therefore warrants the imposition of punitive damages as to

19   Defendant TONI MCBRIDE.

20       52.    Accordingly, Defendants CITY LOS ANGELES and DOES 1 through

21   10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

# FOURTH CLAIM FOR RELIEF

## ASSAULT & BATTERY

### As Against Defendants TONI MCBRIDE, CITY OF LOS ANGELES and DOE Defendants 1 through 10

53.     Plaintiff ESTATE OF DANIEL HERNANDEZ realleges and incorporates the foregoing paragraphs as if set forth herein.

54.     This cause of action arises under the general laws and Constitution of the State of California.  Plaintiffs have complied with the California Tort Claims Act requirements to present a claim for damages. Plaintiffs expect that these claims will be denied outright by the City of Los Angeles or the claims will be denied by the operation of law.  At that point, Plaintiffs will amend their complaint to allege the denial of said claims.

55.     Defendant TONI MCBRIDE assaulted and battered Daniel Hernandez, as pleaded herein above, when said Defendants acted intentionally to cause, and did cause, said non-consensual, unprivileged, unjustified, excessive, harmful or offensive contact to the person of Daniel Hernandez by unreasonably and unjustly shooting and killing Daniel Hernandez.

56.     These acts were undertaken by Defendant TONI MCBRIDE intentionally and without justification.

57.     As a result of these deliberate and unjustified acts undertaken by Defendant TONI MCBRIDE, Daniel Hernandez endured great physical and emotional pain and suffering.

58.     These deliberate and unjustified acts undertaken by Defendant TONI MCBRIDE and DOES 1 through 10 were willful and done with a deliberate disregard for the rights and safety of Daniel Hernandez and, therefore, warrant the imposition of punitive damages as to Defendant TONI MCBRIDE.

59.     Defendant CITY LOS ANGELES is liable to Plaintiffs for the acts of their public employees, the individual Defendants herein, for conduct and/or

1    omissions herein alleged, pursuant to the doctrine of *respondeat superior*, codified at

2    California Government Code § 815.2.

### FIFTH CLAIM FOR RELIEF

#### WRONGFUL DEATH

#### As Against Defendants TONI MCBRIDE,

#### CITY OF LOS ANGELES and DOE Defendants 1 through 10

7        60.    Plaintiffs MANUEL HERNANDEZ and MARIA HERNANDEZ

8    reallege and incorporate the foregoing paragraphs as if set forth herein.

9        61.    This cause of action arises under the general laws and Constitution of the

10   State of California.  Plaintiffs have complied with the California Tort Claims Act

11   requirements to present a claim for damages. Plaintiffs expect that these claims will

12   be denied outright by the City of Los Angeles or the claims will be denied by the

13   operation of law.  At that point, Plaintiffs will amend their complaint to allege the

14   denial of said claims.

15       62.    Defendant TONI MCBRIDE, and DOES 1 through 10, while working as

16   police officers of the LAPD, and acting within the course and scope of their duties,

17   employed negligent tactics and intentionally and/or without due care shot Daniel

18   Hernandez.  The shooting resulted from said defendants' unsafe, improper and

19   negligent tactics.  As a result of these intentional acts and negligence, Daniel

20   Hernandez suffered serious injuries and lost his life.  Said defendants had no legal or

21   reasonable justification for their use of deadly force.

22       63.    As a direct and proximate result of the conduct of Defendant TONI

23   MCBRIDE and DOES 1 through 10, Daniel Hernandez lost his life.  Plaintiffs have

24   been deprived of the life-long love, affection, comfort, and society of Daniel

25   Hernandez, and will continue to be so deprived for the remainder of their natural

26   lives.  Plaintiffs were further caused to pay funeral and burial expenses as a result of

27   the conduct of Defendant TONI MCBRIDE.

28

64.     Defendant CITY OF LOS ANGELES is vicariously liable for the wrongful, intentional and/or negligent acts of Defendant TONI MCBRIDE, and DOES 1 through 10, pursuant to California Government Code § 815.2, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

## SIXTH CLAIM FOR RELIEF

### Civil Rights Violations (Cal. Civ. Code § 52.1)

### As Against Defendants CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, TONI MCBRIDE and DOE Defendants 1 through 10

65.     Plaintiff ESTATE OF DANIEL HERNANDEZ realleges and incorporates the foregoing paragraphs as if set forth herein.

66.     This cause of action arises under the general laws and Constitution of the State of California, including California Civil Code § 52.1 and California Government Code §§820 and 815.2.  Plaintiff ESTATE OF DANIEL HERNANDEZ has complied with the California Tort Claims Act requirements to present a claim for damages. Said Plaintiff expects that this claim will be denied outright by the City of Los Angeles or the claim will be denied by the operation of law.  At that point, the present Plaintiff will amend the complaint to allege the denial of said tort claim.

67.     As a result of the conduct of Defendant TONI MCBRIDE, and DOES 1 through 10, by the use of threats, intimidation, and coercions, interfered with Plaintiff ESTATE OF DANIEL HERNANDEZ's exercise and enjoyment of the rights secured by the United States Constitution and other Federal laws, the Constitution and laws of the State of California, and their rights under California Civil Code § 52.1.

68.     The California Civil Code § 52.1(b) authorizes a private right of action for damages to any person whose constitutional rights are violated. Moreover, "a successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." *Chaudhry v. City of Los Angeles*, 751 F.3d

24

1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir.2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983."); *Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate and excessive force—is [] within the protection of the Bane Act").

69.    Defendants' actions as alleged herein violated Plaintiff ESTATE OF DANIEL HERNANDEZ's constitutional rights against unreasonable searches and seizures and rights to familial association, all of which are protected by the Constitution of the State of California.

70.    As a proximate result of the acts of these Defendants, and each of them, Daniel Hernandez was made to lose his life without cause or justification.

71.    All of the above acts and omissions of Defendant TONI MCBRIDE were wilful, wanton, malicious and oppressive, thereby justifying the awarding of exemplary and punitive damages as to these Defendants.

72.    Defendant TONI MCBRIDE, CITY OF LOS ANGELES and DOES 1 through 10, and each of them, for their respective acts and violations pleaded herein above, are liable to Plaintiff ESTATE OF DANIEL HERNANDEZ for damages, penalties and attorneys' fees as provided in California Civil Code § 52.1.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests entry of judgment in their favor and against Defendants as follows:

A.    For compensatory damages, including pre-death pain and suffering damages, general damages and special damages, and statutory damages for violation of the laws and Constitution of the United States and State of California, in an amount to be determined at trial;

B.    For punitive damages against Defendant TONI MCBRIDE pursuant to 42 U.S.C. § 1983, and any other applicable laws or status, in an amount sufficient to deter and make an example of each non-government entity Defendant;

1    C.    For prejudgment interest to be determined at trial;

2    D.    For reasonable costs of this suit and attorneys' fees, including

3  attorneys' fees pursuant to 42 U.S.C. § 1988; and

4    E.    For such further other relief as the Court may deem just, proper, and

5  appropriate.

6

7  Dated: May 19, 2020                    CASILLAS & ASSOCIATES

8                                         By:   /s/ Arnoldo Casillas

9                                         ARNOLDO CASILLAS
                                          DENISSE O. GASTÉLUM
10                                        Attorneys for Plaintiffs, ESTATE OF DANIEL
                                          HERNANDEZ, MANUEL HERNANDEZ,
11                                        MARIA HERNANDEZ

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DEMAND FOR JURY TRIAL

Plaintiffs ESTATE OF DANIEL HERNANDEZ, by and through successors in interest, Manuel Hernandez and Maria Hernandez, MANUEL HERNANDEZ, individually, and MARIA HERNANDEZ, individually, hereby demand trial by jury.

Dated: May 18, 2020                    CASILLAS & ASSOCIATES

By:   _/s/ Arnoldo Casillas_
ARNOLDO CASILLAS
DENISSE O. GASTÉLUM
Attorneys for Plaintiffs, ESTATE OF DANIEL HERNANDEZ, MANUEL HERNANDEZ, MARIA HERNANDEZ

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL