ARNOLDO CASILLAS, ESQ., SBN 158519
DENISSE O. GASTÉLUM, ESQ., SBN 282771
**CASILLAS & ASSOCIATES**
3777 Long Beach Blvd., Third Floor
Long Beach, CA 90807
Tel:  (562) 203-3030
Fax: (323) 297-2833
Email: acasillas@casillaslegal.com
         dgastelum@casillaslegal.com
Attorneys for Plaintiffs, Estate of Daniel Hernandez,
Manuel Hernandez and Maria Hernandez

MKRTCHYAN LAW
Narine Mkrtchyan, Esq. (SBN. 243269)
1010 North Central Avenue, Suite 204
Glendale, CA 91202
Telephone No. (818) 388-7022
Web: www.narinelaw.com
Email: narine56@msn.com
Attorney for Plaintiff
M.L.H.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTATE OF DANIEL HERNANDEZ, by and through successors in interest, Manuel Hernandez, Maria Hernandez and M.L.H.; MANUEL HERNANDEZ, individually; MARIA HERNANDEZ, individually; M.L.H., a minor, by and through her guardian ad litem CLAUDIA SUGEY CHAVEZ,<br><br>                    Plaintiffs,<br><br>  vs. | **CASE NO.  2:20-cv-04477-DMG-KS**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  Excessive Force/Unreasonable Seizure (42 U.S.C. § 1983)<br>2.  Municipal Liability for Unconstitutional Customs and Practices (42 U.S.C. § 1983)<br>3.  Interference with Familial Integrity Substantive Due Process Violation (42 U.S.C. § 1983)<br>4.  Violation of Civil Rights (42 U.S.C. § 1985 (3))<br>5.  Assault & Battery |

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

| | | |
|---|---|---|
| 1 | CITY OF LOS ANGELES; LOS | ) | 6. Wrongful Death |
| 2 | ANGELES POLICE DEPARTMENT; TONI MCBRIDE; and DOES 1 to 10, | ) ) | 7. Civil Rights Violations (Cal. Civ. Code §§, 51.7, 52.1) |
| 3 | | ) | |
| | Defendants. | ) | **DEMAND FOR JURY TRIAL** |
| 4 | ——————————————— | ) | |

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs ESTATE OF DANIEL HERNANDEZ, by and through successors in interest, Manuel Hernandez, Maria Hernandez and M.L.H, MANUEL HERNANDEZ, individually, MARIA HERNANDEZ, individually, and M.L.H., a minor, by and through her guardian ad litem CLAUDIA SUGEY CHAVEZ, and allege as follows:

## INTRODUCTION

1.    This civil rights action seeks to establish the true and unequivocal facts surrounding the shooting and killing of Daniel Hernandez by Officer Toni McBride of the Los Angeles Police Department. This civil rights action further seeks to establish the violations of fundamental rights under the United States Constitution in connection with the killing of Daniel Hernandez on or about April 22, 2020.

2.    Daniel Hernandez was the loving son of Manuel and Maria Hernandez, and the loving father of his daughter, M.L.H.   Daniel Hernandez was just 38 years old at the time of his death.  He shared a deep love with his parents, daughter and his siblings.  He will always be remembered for his infectious laugh and his sense of humor as well as his deep commitment to his parents and daughter.   Daniel Hernandez's death has been a profound and unimaginable loss to his family, the present Plaintiffs.

3.    Without justification or cause, Defendant Toni McBride shot and killed Daniel Hernandez on April 22, 2020.  This shooting was absolutely unjustified, and it

1  is Plaintiffs' goal to show that the killing of Daniel Hernandez was a senseless and

2  unwarranted act of police abuse.

3  ## JURISDICTION AND VENUE

4      4.      This civil action is brought for the redress of alleged deprivations of

5  constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the Fourth

6  and Fourteenth Amendments of the United States Constitution.  Jurisdiction is

7  founded on 28 U.S.C. §§ 1331, 1343, and 1367.

8      5.      Venue is proper in this Court under 28 U.S.C. § 1391(b), because

9  Defendants reside in, and all incidents, events, and occurrences giving rise to this

10 action occurred in the City of Los Angeles, California.

11     6.      With respect to Plaintiffs' supplemental state claims, Plaintiffs request

12 that this Court exercise supplemental jurisdiction over such claims as they arise from

13 the same facts and circumstances which underlie the federal claims.

14 ## PARTIES

15     7.      Decedent Daniel Hernandez was a resident of Los Angeles, California.

16     8.      The claims made by the ESTATE OF DANIEL HERNANDEZ, are

17 brought by Manuel Hernandez, Maria Hernandez and M.L.H the successors in

18 interest to the Estate of Daniel Hernandez pursuant to California Code of Civil

19 Procedure § 377.32.

20     9.      Plaintiffs MANUEL HERNANDEZ and MARIA HERNANDEZ are of

21 Hispanic dissent, and were, at all times relevant hereto, the natural father and natural

22 mother of decedent Daniel Hernandez.

23     10.     At all times herein mentioned, Plaintiff minor M.L.H. was and is a

24 Hispanic resident of the United States, residing in City of Los Angeles. Plaintiff

25 M.L.H. is the natural daughter of decedent DANIEL HERNANDEZ, age 38.

26     11.     Defendant CITY OF LOS ANGELES (hereinafter "LOS ANGELES") is

27 and was, at all relevant times hereto, a public entity, duly organized and existing

28 under and by virtue of the laws of the State of California, with the capacity to sue and

CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1  be sued.  Defendant LOS ANGELES is responsible for the actions, omissions,

2  policies, procedures, practices and customs of its various agents and agencies.  LOS

3  ANGELES owns, operates, manages, directs and controls Defendant LOS ANGELES

4  POLICE DEPARTMENT (hereinafter also "LAPD"), also a separate public entity,

5  which employs other Doe Defendants in this action. LOS ANGELES POLICE

6  DEPARTMENT is an agency of Defendant CITY and Defendant CITY is a "person"

7  subject to suit within the meaning of 42 U.S.C. § 1983 under *Monell v. Dept. Social*

8  *Services*, (1978) 436 U.S. 658, 691. Under California Government Code § 815.2(a),

9  Defendant CITY is liable for any and all wrongful acts hereinafter complained of

10 committed by any of the individual officer defendants. At all times relevant to the

11 facts alleged herein, Defendant LOS ANGELES was responsible for assuring that the

12 actions, omissions, policies, procedures, practices and customs of its employees,

13 including LAPD employees, complied with the laws and the Constitutions of the

14 United States and of the State of California.

15        12.    Defendant Officer TONI MCBRIDE (hereinafter also "MCBRIDE") is a

16 police officer working for the Los Angeles Police Department.  Defendant TONI

17 MCBRIDE is sued in her official and individual capacity.  At all times relevant to the

18 present action, Defendant TONI MCBRIDE was acting under the color of law, to wit,

19 under the color of the ordinances, regulations, policies, customs, and usages of

20 Defendant LOS ANGELES, as well as under the color of the statutes and regulations

21 of the State of California.

22        13.    At all relevant times, each of DOES 1 through 10 were employees of the

23 LAPD. At all times relevant herein, each of DOES 1 through 10 was an employee

24 and/or agent of Defendant LOS ANGELES and he or she acted under color of law, to

25 wit, under the color of the statutes, ordinances, regulations, policies, customs, and

26 usages of Defendant LOS ANGELES and the LAPD, as well as under the color of the

27 statutes and regulations of the State of California.

28

---

4

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

14.    At all relevant times, each of the Defendants DOES 1 through 10 was acting within his or her capacity as an employee, agent, representative and/or servant of LOS ANGELES and is sued in their individual capacities.

15.    On information and belief, at all relevant times, Defendant TONI MCBRIDE, and DOES 1 through 10, inclusive, were residents of the City of Los Angeles, California.

16.    The true names of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct and liabilities alleged herein.

17.    Defendants DOES 6 through 10 were also duly appointed police officers, sergeants, lieutenants, detectives, or other supervisors, officials, executives and/or policymakers of LAPD, a department and subdivision of Defendant LOS ANGELES, and at all times mentioned herein said Defendants were acting in the course and scope of their employment with Defendant LOS ANGELES, which is liable under the doctrine of *respondeat superior* pursuant to California Government Code § 815.2.

18.    Defendants DOES 1 through 3 are supervisorial employees for Defendant LOS ANGELES who were acting under color of law within the course and scope of their duties as police officers for Defendant LOS ANGELES. Defendants DOES 1 through 3 were acting with the complete authority and ratification of their principal, Defendant LOS ANGELES.

19.    Defendants DOES 4 through 10 are managerial, supervisorial, and policymaking employees of Defendant LOS ANGELES, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for Defendant LOS ANGELES. Defendants DOES 9 and 10

5

1  were acting with the complete authority and ratification of their principal, Defendant

2  LOS ANGELES.

3      20.     Each of the Defendants caused and is responsible for the unlawful

4  conduct and resulting by, inter alia, personally participating in the conduct, or acting

5  jointly and in concert with others who did so; by authorizing, acquiescing or failing to

6  take action to prevent the unlawful conduct; by promulgating policies and procedures

7  pursuant to which the unlawful conduct occurred; by failing and refusing, with

8  deliberate indifference to Plaintiffs' rights, to initiate and maintain adequate

9  supervision and/or training; and, by ratifying the unlawful conduct that occurred by

10 agents and peace officers under their direction and control.  Whenever and wherever

11 reference is made in this Complaint to any act by a Defendant, such allegation and

12 reference shall also be deemed to mean the acts and failures to act of each Defendant

13 individually, jointly and severally. They are sued in their individual and official

14 capacities and in some manner are responsible for the acts and omissions alleged

15 herein. Plaintiffs will ask leave of this Court to amend this Complaint to allege such

16 name and responsibility when that information is ascertained.  Each of the

17 Defendants is the agent of the other.

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

21.    Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

22.    On or about April 22, 2020, at approximately 5:37 p.m., Daniel Hernandez was involved in a multiple-vehicle traffic collision with individuals injured and in a critical condition at the intersection of San Pedro Street and 32nd Street in the south-central historic district of Los Angeles. Bystanders called 9-1-1 to render help to those severely injured in the collision, including Daniel Hernandez.

23.    Police officers from the Los Angeles Police Department Newton Division responded to the scene of the collision.  One of the responding police officers was 23-year-old TONI MCBRIDE—a self-proclaimed public figure on social media showcasing her love of guns as well as her self-proclaimed firearms and tactical prowess in shooting competitions.

24.    DANIEL HERNANDEZ had been injured in the accident, exited his vehicle demonstrating shock, disorientation, trauma and panic. He walked a few steps from his vehicle in an unsteady gait posing no threat to anyone when Defendant MCBRIDE discharged two rounds at HERNANDEZ.  He fell to the ground immediately. After her initial volley of gunfire, Defendant TONI MCBRIDE continued to shoot at DANIEL HERNANDEZ even after he fell to the ground in a fetal position.  Each and every round fired by MCBRIDE was unnecessary and each shot constituted the use of excessive force. Accordingly, the shooting and killing of Daniel Hernandez was unjustified and this use of force was unwarranted and excessive under the circumstances.

25.    Daniel Hernandez was struck by the gunshot and eventually died from the gunshot injuries.  Each of MCBRIDE's rounds lacked justification and recklessly endangered multiple bystanders.  Moreover, the shooting violated LAPD policy and training regarding the drawing of weapons, tactics, and the use of force.

26.    At the time she fired her pistol, MCBRIDE and HERNANDEZ were more than 30 feet apart and shirtless HERNANDEZ posed no threat or danger to anyone and none to MCBRIDE in particular. DOE Defendants 1-5 witnessed MCBRIDE's deadly force and did nothing to interfere with MCBRIDE's deadly force when they could, and upon confirming HERNANDEZ was lifeless, immediately began to concoct a plausible, but false scenario conspiring to cover up MCBRIDE's wrongful misconduct by asserting HERNANDEZ posed a threat to the police and/or public because a knife was recovered from the scene. The fabricated scenario was designed to give the false and fraudulent appearance of justification for the use of deadly force when MCBRIDE and DOES 1-10 knew none existed. MCBRIDE was neither detained nor arrested, relieved of duty, nor referred to the Los Angeles District Attorney for prosecution and remains in good standing with the CITY and LAPD notwithstanding the irrefutable evidence of her unjustified homicide.

27.    Prior to and after the shooting of DANIEL HERNANDEZ, TONI MCBRIDE improperly marketed herself as an LAPD officer on various social media platforms.  She improperly capitalized on her position as an LAPD officer through this marketing and she directly benefited monetarily and otherwise from such marketing. This is and was in violation of the letter and spirit of the LAPD's Code of Ethics which bars the use of and LAPD officer's position to garner or otherwise secure unwarranted privileges or exemptions for themselves.  TONI MCBRIDE is the daughter of LAPD sergeant Jamie McBride, who sits or sat as a director of the Los Angeles Police Protective League (LAPPL), which is the police union representing LAPD officers up to the rank of lieutenant. The LAPPL serves to protect the interests of LAPD officers through lobbying, legislative and legal advocacy, and political action.  Because of her father's rank and his influence in the LAPPL, TONI MCBRIDE has received improper benefits from the LAPD and has flaunted and ignored LAPD policies and the LAPD Code of Ethics to her great benefit, knowing

CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

that she would not be disciplined for such violations due to her father's influence. She, for example, was allowed to carry a firearm, including a concealed firearm, as an LAPD cadet, contrary to LAPD policies.  Likewise, LAPD officers and supervisors knew of her status and efforts to become a social media influencer by using her LAPD position.  Her various postings mention the LAPD or refer to her status as an LAPD officer.  In one posted YouTube video she is introduced as an LAPD officer and she is heard to enthusiastically claim that she is from  the LAPD's "Shootin' Newton" station.  Many LAPD officers and supervisors followed her on-line on her various social media pages.  None reported her improper use of her LAPD position on her various postings or the postings of others that mentioned, referred to or extolled her position as an LAPD officer.   Because of her father's status with the LAPPL, TONI MCBRIDE garnered improper benefits as an LAPD officer and was allowed to violate LAPD policies and the LAPD Code of Ethics.   In wrongfully shooting and killing, DANIEL HERNANDEZ, she knew that she would receive favorable treatment from the LAPD in their investigation of the incident, in the administrative investigation of the incident, in the imposition of administrative discipline, and in the presentation of criminal case against her to the District Attorney's Office for prosecution.   In fact, at her first possible opportunity after the shooting that underlies this case, she called her father to seek advice as to how to manage the circumstances.

28.     At some point after the shooting, recognizing that her posts on social media, including those which depicted her while training at a tactical firearms facility that sponsored her, Taran Tactical Innovations, would paint her in a bad light, TONI MCBRIDE contacted Taran Tactical Innovations and had various YouTube videos showing running through various tactical shooting courses taken off their social media sites.  She also shut down or otherwise concealed her tactical training background by closing her public social media pages/accounts or restricting their access so as to prevent the public from accessing them.   TONI MCBRIDE spent more time training at the Taran Tactical facility than she did with the LAPD.  This

1    training was inconsistent with the LAPD's training and policies as well as the

2    philosophy of de-escalation that the LAPD sought to inculcate in their officers.

3        29.    Defendants LOS ANGELES and the LAPD were long aware of the

4    propensity of their police officers, including Defendant TONI MCBRIDE, to

5    callously and recklessly use excessive force against members of the public,

6    particularly targeting minority groups, and to engage in deceitful misconduct. The

7    following incidents illustrate the use of excessive deadly force, all of which are

8    pursuant to these unconstitutional customs, policies and practices of the LAPD:

9        a.    On February 3, 2007, six LAPD officers used excessive force against

10             Mauricio Cornejo when the officers severely beat Mauricio Cornejo after

11             he fled a traffic stop.  At the time of the beating, Mauricio Cornejo was

12             unarmed and posed no threat of death or serious bodily injury to the

13             officers or to anyone else.  The LAPD officers were not disciplined or

14             required to undergo any retraining as a result of their use of deadly force

15             against Mauricio Cornejo.  The City of Los Angeles concluded that the

16             use of force against Mauricio Cornejo was justified and that it was

17             within and consistent with LAPD policy.

18        b.    On January 14, 2011, LAPD Officer Aaron Goff used excessive force

19             when he shot and killed Reginald Doucet, Jr. At the time of the shooting,

20             Reginald Doucet, Jr. was unarmed, naked and experiencing a psychotic

21             episode. Officer Goff shot Reginald Doucet, Jr. twice in the back. LAPD

22             Officer Goff was not disciplined or required to undergo any retraining as

23             a result of his use of deadly force against Reginald Doucet, Jr.  The City

24             of Los Angeles concluded that the use of force against Reginald Doucet,

25             Jr. was justified and that it was within and consistent with LAPD policy.

26        c.    On May 10, 2011, LAPD Officer Arthur Gamboa used excessive force

27             when he shot and killed Anthony Garrett. Officer Gamboa shot Arthur

28             Garrett twice in the back.  Although the Board of Police Commissioners

10

1  determined that the pre-shooting tactics and shooting were outside
2  department policy, Officer Gamboa was not disciplined or required to
3  undergo any retraining as a result of his use of excessive deadly force
4  against Arthur Garrett.

5      d.      On July 22, 2011, LAPD Officer Fernando Ortega used excessive force
6  against Maria del Carmen Ruvalcaba when he shot and killed Maria del
7  Carmen Ruvalcaba in her home. At the time that Officer Ortega fired,
8  Maria del Carmen Ruvalcaba was unarmed and posed no threat of death
9  or serious bodily injury to the shooting officer, to any of the other
10  officers on scene, or to anyone else. Officer Ortega was not disciplined
11  or required to undergo any retraining as a result of his use of deadly
12  force against Maria del Carmen Ruvalcaba. The City of Los Angeles
13  concluded that the shooting of Maria del Carmen Ruvalcaba by Officer
14  Ortega was justified and that it was within and consistent with LAPD
15  policy.

16      e.      On February 2, 2013, LAPD officers used excessive force against Sergio
17  Pina. Sergio Pina was shot multiple times although he was unarmed and
18  posed no threat of death or serious bodily injury to the officers or any
19  other person at the time that he was shot. None of the officers involved
20  in the shooting of Sergio Pina were disciplined or required to undergo
21  any re-training as a result of their use of excessive deadly force against
22  Sergio Pina.  The City of Los Angeles declared the shooting of Sergio
23  Pina was justified and that it was within and consistent with LAPD
24  policy.

25      f.      On March 19, 2013, LAPD Officers Gerald Adams, Houston Stauber,
26  Alfredo Morales and Shaun Hillman used excessive force against David
27  Martinez when they shot him multiple times, killing him. At the time of
28  the officers' use of excessive deadly force, David Martinez was

11

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   unarmed, was running away from the officers, and posed no threat of

2   death or serious bodily injury to the officers or any other person. None

3   of the officers involved in the shooting of David Martinez were

4   disciplined or required to undergo any re-training as a result of their use

5   of excessive deadly force. The City of Los Angeles declared the

6   shooting of David Martinez to be justified and that it was within and

7   consistent with LAPD policy.

8       g.   On March 5, 2015, LAPD Officer Brian Van Gorden used excessive

9   force against Sergio Navas when he shot and killed Sergio Navas.

10   Officer Van Gorden and Sergio Navas were engaged in a vehicle pursuit

11   which ended in Officer Van Gorden shooting and killing Sergio Navas.

12   At the time that Officer Van Gorden fired, Sergio Navas was unarmed

13   and posed no threat of death or serious bodily injury to the shooting

14   officer, to any of the other officers on scene, or to anyone else. The

15   Board of Police Commissioners determined that the pre-shooting tactics

16   and shooting were outside department policy.

17       h.   On May 5, 2015, LAPD Officer Clifford Proctor used excessive force

18   against Brendon Glenn when he shot and killed Brendon Glenn.  Officer

19   Proctor and Brendon Glenn were engaged in an altercation which ended

20   in Officer Proctor shooting and killing Brendon Glenn. At the time that

21   Officer Proctor fired, Brendon Glenn was unarmed and posed no threat

22   of death or serious bodily injury to the shooting officer, to any of the

23   other officers on scene, or to anyone else.  The Board of Police

24   Commissioners determined that the pre-shooting tactics and shooting

25   were outside department policy.

26       i.   On May 6, 2015, LAPD Officer John Baker used excessive force against

27   an unidentified homeless man when he shot and killed him.  At the time

28   that Officer Baker fired, the unidentified homeless man posed no threat

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    of death or serious bodily injury to the shooting officer, to any of the

2    other officers on scene, or to anyone else. The Board of Police

3    Commissioners determined that the pre-shooting tactics were outside

4    department policy, and that the unintentional discharge was negligent

5    and warranted a finding of administrative disapproval.

6    j.    On July 9, 2015, LAPD Officer Stephan Shuff used excessive force

7    against Neil Peter, a 38-year-old male, when he shot and killed him. At

8    the time that Officer Shuff fired, Neil Peter posed no threat of death or

9    serious bodily injury to the shooting officer, to any of the other officers

10   on scene, or to anyone else. The Board of Police Commissioners

11   determined that the pre-shooting tactics and the shooting were outside

12   department policy

13   k.    On September 15, 2015, LAPD Officers Patricia Barajas and Brady

14   Cuellar used excessive force against Florencio Chaidez, a 32-year-old

15   male, when they shot and killed him.  At the time of the shooting,

16   Florencio Chaidez posed no threat of death or serious bodily injury to

17   the shooting officers, to any of the other officers on scene, or to anyone

18   else. The Board of Police Commissioners determined that the pre-

19   shooting tactics were outside department policy.

20   l.    On October 3, 2015, LAPD Officers Andrew Hacoupian and Zackary

21   Goldstein used excessive force against James Byrd, a 46-year-old male,

22   when they shot and killed him.  At the time of the shooting, James Byrd

23   posed no threat of death or serious bodily injury to the officers, to any of

24   the other officers on scene, or to anyone else. The Board of Police

25   Commissioners determined that the shooting was outside department

26   policy.

27   m.    On February 6, 2016, LAPD Officers Josue Merida and Jeremy Wagner

28   used excessive force against Jose Mendez, a 16-year-old boy, when they

13

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   shot and killed him.  At the time of the shooting, Jose Mendez posed no
2   threat of death or serious bodily injury to the shooting officers, to any of
3   the other officers on scene, or to anyone else. The Board of Police
4   Commissioners determined that the pre-shooting tactics were outside
5   department policy.
6   n.    On February 14, 2016, LAPD Officers used excessive force when they
7         shot and killed Rammy Sam Jaradat, a 26-year-old male.  At the time of
8         the shooting, Rammy Sam Jaradat posed no threat of death or serious
9         bodily injury to the shooting officers, to any of the other officers on
10        scene, or to anyone else. The Board of Police Commissioners
11        determined that the pre-shooting tactics were outside department policy.
12  o.    On April 10, 2016, LAPD Officers used excessive force when they shot
13        and killed Arturo Valdez, a 27-year-old male.  At the time of the
14        shooting, Arturo Valdez posed no threat of death or serious bodily injury
15        to the shooting officers, to any of the other officers on scene, or to
16        anyone else. The Board of Police Commissioners determined that the
17        pre-shooting tactics were outside department policy.
18  p.    On April 30, 2016, LAPD Officers Jesse Murphy and David Lagesse
19        used excessive force when they shot and killed Jose Marion, a 28-year-
20        old male.  At the time of the shooting, Jose Marion posed no threat of
21        death or serious bodily injury to the shooting officers, to any of the other
22        officers on scene, or to anyone else. The Board of Police Commissioners
23        determined that the pre-shooting tactics were outside department policy.
24  q.    On June 10, 2016, LAPD Officer Charles Kumlander  used excessive
25        force when he shot and killed Keith Myron Bursey Jr., a 31-year-old
26        male.  At the time Officer Kumlander fired, Keith Myron Bursey Jr.
27        posed no threat of death or serious bodily injury to the shooting officer,
28        to any of the other officers on scene, or to anyone else. The Board of

14

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

Police Commissioners determined that the pre-shooting tactics were outside department policy.

r.    On July 25, 2016,  LAPD Officers Francisco Zaragoza, Joseph Chavez and Isaac Fernandez used excessive force when they shot and killed Robert Risher, an 18-year-old male.  At the time of the shooting, Robert Risher posed no threat of death or serious bodily injury to the shooting officers, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy.

s.    On August 9, 2016, LAPD Officer Eden Medina used excessive force when he shot and killed Jesse Romero, a 14-year-old boy.  At the time of the shooting, the boy posed no threat of death or serious bodily injury to the shooting officer, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy.

t.    On August 19, 2016, LAPD Officers Jonathan Johnson and Jennifer Nodes used excessive force when they shot and killed Marcelo Luna, a 47-year-old male.  At the time of the shooting, Marcelo Luna posed no threat of death or serious bodily injury to the shooting officers, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy.

u.    On October 1, 2016, LAPD Officer Leovardo Guillen used excessive force when he shot and killed Carnell Snell, Jr., an 18-year-old male.  At the time Officer Guillen fired, Carnell Snell, Jr. posed no threat of death or serious bodily injury to the shooting officer, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy.

15

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

v.  On October 2, 2016, LAPD Officer Ian Chessum used excessive force when he shot and killed Daniel Perez, a 16-year-old boy.  At the time Officer Chessum fired, the boy posed no threat of death or serious bodily injury to the shooting officer, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy.

w.  On November 28, 2016, LAPD Officers used excessive force when they shot and killed an unidentified 23-year-old male. At the time of the shooting, the male posed no threat of death or serious bodily injury to the shooting officers, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics were outside department policy.

x.  In 2016, the Board of Police Commissioners required the LAPD to reevaluate its excessive force policies in an effort to reduce the number of police shooting by revamping department policies, revising training and emphasizing the use of less-lethal devices.

y.  On March 4, 2017, LAPD Officers Charles Garcia and Ghanshym Patel used excessive force when they shot and killed Alejandro Mendez, a 70-year-old elderly man. At the time of the shooting, Alejandro Mendez posed no threat of death or serious bodily injury to the shooting officers, to any of the other officers on scene, or to anyone else. The Board of Police Commissioners determined that the pre-shooting tactics and the shooting were outside department policy.

z.  On March 25, 2017, LAPD Officers Ivan Garcia, Benjamin Hearst, Nicholas Becerra, Elieser Domingo used excessive force when they shot and killed Juan Avila, a 35-year-old male. At the time of the shooting, Juan Avila posed no threat of death or serious bodily injury to the shooting officers, to any of the other officers on scene, or to anyone else.

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  The Board of Police Commissioners determined that the pre-shooting

2  tactics were outside department policy.

3  aa.   On July 27, 2017, LAPD Officer Edward Agdeppa used excessive force

4  when he shot and killed Jerauld Hammond, a 46-year-old male. At the

5  time Officer Agdeppa fired, Jerauld Hammond posed no threat of death

6  or serious bodily injury to the shooting officer, to any of the other

7  officers on scene, or to anyone else. The Board of Police Commissioners

8  determined that the pre-shooting tactics were outside department policy.

9  bb.   On December 30, 2017, LAPD Officers Alvaro Carlos, Mathew

10  Matzkin, Steve Norris, and Peter Tulagan used excessive force when

11  they shot and killed Oscar Sandoval, a 39-year-old male. At the time of

12  the shooting, Oscar Sandoval posed no threat of death or serious bodily

13  injury to the shooting officers, to any of the other officers on scene, or to

14  anyone else. The Board of Police Commissioners determined that the

15  pre-shooting tactics were outside department policy.

16  cc.   On January 14, 2018, LAPD Officer Edward Artiaga used excessive

17  force against Christian Escobedo, a 22-year-old male, when he shot and

18  killed him. At the time Officer Artiaga fired, Christian Escobedo posed

19  no threat of death or serious bodily injury to the shooting officer, to any

20  of the other officers on scene, or to anyone else. The Board of Police

21  Commissioners determined that the pre-shooting tactics were outside

22  department policy.

23  dd.   On February 25, 2018, LAPD Officers shot and killed an unidentified

24  32-year-old male. At the time of the shooting, the male posed no threat

25  of death or serious bodily injury to the shooting officers, to any of the

26  other officers on scene, or to anyone else. The Board of Police

27  Commissioners determined that the pre-shooting tactics were outside

28  department policy.

17

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

ee.    On August 7, 2018, LAPD Officers James Muniz and Melchor Oronez
used excessive force against Santos Nunez-Garcia, a 70-year-old elderly
man, when they shot and killed him. At the time of the shooting, the
elderly man posed no threat of death or serious bodily injury to the
shooting officers, to any of the other officers on scene, or to anyone else.
The Board of Police Commissioners determined that the pre-shooting
tactics were outside department policy.

ff.    On October 29, 2018, LAPD Officers used excessive force when they
shot and killed Albert Ramon Dorsey, a 30-year-old male. At the time of
the shooting, Albert Ramon Dorsey posed no threat of death or serious
bodily injury to the shooting officers, to any of the other officers on
scene, or to anyone else. The Board of Police Commissioners
determined that the pre-shooting tactics were outside department policy.

gg.    On April 14, 2019, LAPD Officers Jaime Luna and Bradley Nielson
used excessive force against William Crawford, a 47-year-old male,
when they shot and killed him. At the time of the shooting, William
Crawford posed no threat of death or serious bodily injury to the
shooting officers, to any of the other officers on scene, or to anyone else.
The Board of Police Commissioners determined that the pre-shooting
tactics were outside department policy.

30.    Defendants LOS ANGELES and LAPD were aware that Defendant
TONI MCBRIDE had extremist tendencies and beliefs. Defendant TONI MCBRIDE
regularly attended and was an instructor at shooting academies and firearms
competitions whose founders held extremist, homophobic, racist and separatist views.
Defendant TONI MCBRIDE commented on-line and blogged about her affiliation
with these academies and firearms competitions.

///

///

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

# FIRST CLAIM FOR RELIEF

## Excessive Force/Unreasonable Seizure

## 42 U.S.C. § 1983

## By Plaintiff Estate of Daniel Hernandez

## As Against Defendants TONI MCBRIDE

## and DOES 1 through 10

31.    Plaintiff ESTATE OF DANIEL HERNANDEZ  realleges and incorporates the foregoing paragraphs as if set forth herein.

32.    Defendant TONI MCBRIDE's actions described herein violated Daniel Hernandez's rights under the Fourth Amendment to the United States Constitution incorporated and made applicable to states and municipalities by the Due Process Clause of the Fourteenth Amendment, by subjecting Daniel Hernandez to unreasonable searches and seizures of his person.

33.    At the time Daniel Hernandez was shot and killed, he was not engaging in any assaultive or threatening conduct. Under the totality of the relevant circumstances that existed, Daniel Hernandez posed no danger or threat to Defendant TONI MCBRIDE, or anyone else. The shooting and killing of Daniel Hernandez was unreasonable under the circumstances in every respect.

34.    These actions violated Daniel Hernandez's right to be free from unreasonable searches and seizures as guaranteed under the Fourth Amendment to the United States Constitution.

35.    The violation of Daniel Hernandez's Fourth Amendment rights occurred pursuant to a policy, custom, or practice, maintained by LOS ANGELES of subjecting private citizens to unreasonable searches and seizures in violation of the Fourth Amendment to the United States.

///

///

CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

36.     Defendants' conduct violated clearly established constitutional or other rights, of which Defendants knew, or of which reasonable public officials should have known, rendering Defendants liable to Plaintiffs under 42 U.S.C. § 1983.

37.     After being shot by Defendant TONI MCBRIDE, and/or DOES 1 through 10, Daniel Hernandez endured great physical and emotional pain and suffering.

38.     Accordingly, Defendant TONI MCBRIDE and defendants DOES 1 through 10 are liable to Plaintiff for compensatory damages pursuant to 42 U.S.C. § 1983.

39.     The unauthorized, unwarranted killing of Daniel Hernandez was willful and done with a deliberate disregard for the rights and safety of Daniel Hernandez, and therefore warrants the imposition of punitive damages as to Defendants TONI MCBRIDE and DOES 1 through 10.

## SECOND CLAIM FOR RELIEF

**Municipal Liability for Unconstitutional Customs and Practices**

**42 U.S.C. § 1983**

**As Against Defendant CITY OF LOS ANGELES**

**and LOS ANGELES POLICE DEPARTMENT**

40.     Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

41.     On and before April 22, 2020, and prior to the killing of Daniel Hernandez, Defendants LOS ANGELES and LAPD were aware that LAPD police officers, including Defendant TONI MCBRIDE, had engaged in a custom and practice of callous and reckless use of firearms and other misconduct, as summarized in the paragraphs above.

42.     Defendants LOS ANGELES and LAPD acting with deliberate indifference to the rights and liberties of the public in general, and of the present

CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

Plaintiffs, and of persons in Daniel Hernandez's class, situation and comparable position in particular, knowingly maintained, enforced and applied customs and practices of:

a. Encouraging, accommodating, or ratifying the shooting of residents;

b. Encouraging, accommodating, or ratifying the use of excessive and unreasonable force, including deadly force;

c. Encouraging, accommodating, or facilitating a "code of silence" among LAPD officers/supervisors, pursuant to which false reports were generated and excessive and unreasonable force was covered up;

d. Employing and retraining, as police officers and other personnel, including individuals such as Defendant TONI MCBRIDE, who said Defendants knew or reasonably should have known had dangerous propensities for abusing her authority and for mistreating members of the public;

e. Inadequately supervising, training, and disciplining LAPD police officers, including Defendant TONI MCBRIDE, who said Defendants knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

f. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling intentional misconduct by officers;

g. Assigning police officers with known histories of misconduct, including criminal conduct, in accord with LAPD custom of assigning these police officers to come into contact with members of the public;

h. Ratifying wrongful conduct by police officers and supervisors which result in serious injuries and death to members of the public, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct;

21

i.      Failing to discipline, investigate and take corrective actions against LAPD police officers for misconduct, including, but not limited to, unlawful detention, excessive force and false reports.

j.      Training officers for the CITY as if the LAPD were a paramilitary organization thereby promoting attitude and behavior among the administration and rank and file inconsistent with a civilian police force;

k.      Failing to create a "paper trail" of Officer misconduct by systemically

l.      rejecting citizen complaints at the early stages of an internal affairs or

m.     department investigation;

n.      Assigning problem officers or employees who "work in gray" to reject the claims of officer misconduct during the initial stages of an internal affairs or department investigation;

o.      Assigning officers who are the subject of internal affairs investigations to the Department of Internal Affairs while the investigation is pending;

p.      Reassigning officers to administrative duties or allowing them take "time-off" in order to avoid any suspensions or discipline on their records;

q.      Maintaining vague, ambiguous, and biased records that do not properly, adequately, or accurately apprise others of the officers' past misconduct;

r.      Failing to internally investigate any cases that are pending litigation which usually relate to the most serious forms of officer misconduct;

s.      Failing to internally investigate claims that have not been internally filed but were externally reported or known by the Department;

t.      Hiding behind settlements, general releases, and "no fault admissions" related to lawsuits or government claims;

u.      Transferring, relocating, and/or promoting Officers or allowing them to

v.      resign prior to any internal investigation completing or taking place;

w.      Failing to adequately flag problem officers within the department;

CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1    x.    Failing to adequately retrain, discipline, suspend, or terminate problem

2          officers within the department;

3    y.    Transferring, moving, and/or relocating its problem Officers to various

4          departments, stations, divisions, and positions in order to essentially

5          "bury," ignore, dilute, hide, and spread these problem Officers, along

6          with their incidents of misconduct, to other LAPD assignments and to

7          evade internal, disciplinary, and other investigations;

8    z.    Allowing its Officers to participate in "renegade," "gang-like," cliques,

9          which facilitate, conspire, promote, organize, encourage, and commit

10         acts of police brutality, aggressive police tactics, and officer misconduct;

11   aa.   Allowing acts of excessive force to be committed against suspects,

12         inmates, or defendants, in order for an Officer to gain membership into

13         one of these renegade gang-like cliques;

14   bb.   Allowing Officers to encourage, intimidate, and compel others to "work

15         in gray," or maintain a "code of silence," or "blue code," regarding these

16         unconstitutional abuses in order to protect members, recruit younger

17         officers and earn promotions.

18        43.    By reason of the aforementioned customs and practices, Plaintiffs were

19   severely injured and subjected to pain and suffering as alleged above in the First

20   Claim for Relief.

21        44.    Plaintiffs are informed and believe and thereon allege that at the time of

22   the incident alleged above and long prior thereto, the CITY and LOS ANGELES

23   POLICE DEPARTMENT and other supervisory officers of the CITY and LAPD, as

24   yet unknown to plaintiff, knew or should have known that defendants, and each of

25   them, are dishonest and corrupt individuals and who are prone to use unreasonable or

26   deadly force, and failed to properly train, instruct, supervise, investigate, regulate or

27   discipline them. These failures and the aforementioned practices, policies and

28

23

1  customs were and are the proximate cause of the injuries and death to plaintiff's

2  decedent.

3      45.    By way of example, in 2020, the Los Angeles Police Department has

4  reported seventeen (17) separate officer involved shootings and critical incidents,

5  despite the CITY's "stay at home" orders, due to the Covid-19 pandemic. In 2019 and

6  2018, the LOS ANGELES POLICE DEPARTMENT reported thirty-six (36) and

7  thirty-nine (39) officer involved shootings and critical incidents.

8      46.    As such, these expressly adopted official policies or widespread,

9  longstanding practices or customs constitute a standard operating procedure of

10 Defendant, CITY, which has resulted in repeated incidents of

11     47.    officer involved shootings and excessive force, against members of the

12 general public, inmates, suspects, and defendants.

13     48.    22. Plaintiffs are informed and believe and thereon allege that at the time

14 of the incident alleged above, prior and subsequent thereto, LAPD had (A)

15 knowledge Defendant Deputy TONI MCBRIDE had demonstrated her reckless and

16 homicidal propensities prior to the death of DANIEL HERNANDEZ, (B) LAPD had

17 inadequate use of force guidelines on the use of deadly force; (C) the training and

18 supervision of police officers in the use of force and deadly force by the LAPD was

19 and is grossly inadequate; (D) Use of Force regulations were and are routinely

20 ignored or perverted to justify virtually all uses of force as being within LAPD

21 policy. These failures were and are the proximate cause of plaintiffs' decedent's death.

22     49.    The aforesaid acts and omissions of Defendants were done knowingly,

23 intentionally, depriving plaintiff's decedent of his constitutional rights and the

24 constitutional rights of the present plaintiffs.

25     50.    Defendants LOS ANGELES and LAPD with various other officials,

26 whether named or unnamed, had either actual or constructive knowledge of the

27 deficient policies, practices and customs alleged in the paragraphs above. Despite

28 having knowledge as stated above these Defendants condoned, tolerated and through

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    actions and inactions thereby ratified such customs and practices.  Said Defendants

2    also acted with deliberate indifference to the foreseeable effects and consequences of

3    these policies with respect to the constitutional rights of Plaintiffs and other

4    individuals similarly situated.

5         51.    Plaintiffs are informed and believe and thereon allege that Defendant

6    TONI MCBRIDE had a history and propensity for acts of the nature complained of

7    herein and manifested such propensity prior to and during her employment and/or

8    agency with Defendant LOS ANGELES. Plaintiffs are further informed and believe

9    and thereon allege that Defendants LOS ANGELES and LAPD knew, or in the

10   exercise of reasonable care should have known, of such prior history and propensity

11   at the time such individuals were hired and/or during the time of their employment.

12   These Defendants' disregard of this knowledge and/or failure to adequately

13   investigate and discover and correct such facts caused the violation of Plaintiffs'

14   constitutional rights.

15        52.    The policies, practices, and customs implemented and maintained and

16   still tolerated byDefendants LOS ANGELES and LAPD were affirmatively linked to

17   and were a significantly influential force behind the injuries of Plaintiffs.

18        53.    By reason of the aforementioned acts and omissions, Daniel Hernandez

19   was shot and killed by Defendant TONI MCBRIDE.

20        54.    Accordingly, Defendants LOS ANGELES and LAPD are liable to

21   Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1

## **THIRD CLAIM FOR RELIEF**

2

**Interference with Familial Integrity**

3

**Substantive Due Process Violation**

4

**42 U.S.C. § 1983**

5

**As Against Defendants CITY OF LOS ANGELES, LOS ANGELES**

6

**POLICE DEPARTMENT, TONI MCBRIDE,**

7

**and DOE Defendants 1 through 10**

8      55.    Plaintiffs MANUEL HERNANDEZ, MARIA HERNANDEZ and

9    M.L.H reallege and incorporate the foregoing paragraphs as if set forth herein.

10      56.    The substantive due process clause of the Fourteenth Amendment to the

11    United States Constitution guarantees all persons the right to be free from unlawful

12    state interference with their familial relations. 42 U.S.C. § 1983 provides a private

13    right of action for conduct which violates this right.

14      57.    On or about April 22, 2020, at approximately 5:37 p.m., Daniel

15    Hernandez was involved in a multiple-vehicle traffic collision at the intersection of

16    San Pedro Street and 32nd Street in the south-central historic district of Los Angeles.

17    Bystanders called 9-1-1 to render help to those severely injured in the collision,

18    including Daniel Hernandez.  Police officers from the Los Angeles Police

19    Department Newton Division responded to the scene of the collision.  One of the

20    responding police officers was 23-year-old TONI MCBRIDE—a self-proclaimed

21    public figure on social media showcasing her love of guns in shooting competitions.

22    Without cause, Defendant TONI MCBRIDE used unlawful and excessive force

23    against Daniel Hernandez shooting him multiple times.  Defendant TONI MCBRIDE

24    continued to shoot at Daniel Hernandez even once he fell to the ground in a fetal

25    position.  The force used was unreasonable and unjustified under the law. Daniel

26    Hernandez died from the injuries.

27      58.    As alleged above, the shooting and killing of Daniel Hernandez was

28    unreasonable under the circumstances of the encounter between Daniel Hernandez

26

1   and Defendant TONI MCBRIDE.  As such, the shooting and killing of Daniel

2   Hernandez violated the constitutional limits on police use of deadly force in violation

3   of the Fourth Amendment's limits on unreasonable seizures.

4        59.   At the same time, the shooting and killing of Daniel Hernandez by

5   Defendant TONI MCBRIDE violated the rights of the present plaintiffs to be free

6   from police interference in their relationship with Daniel Hernandez.

7        60.   The unreasonable conduct of Defendant TONI MCBRIDE was the direct

8   and proximate cause of the death of Daniel Hernandez. As a result of the

9   unreasonable conduct of Defendant TONI MCBRIDE, Plaintiffs lost Daniel

10  Hernandez, as well as his love, affection, society and moral and economic support.

11       61.   The unreasonable conduct of these Defendants was willful and done

12  with a deliberate disregard for the rights and safety of Daniel Hernandez and the

13  present Plaintiffs and therefore warrants the imposition of punitive damages as to

14  Defendant TONI MCBRIDE.

15       62.   Accordingly, Defendants CITY LOS ANGELES and DOES 1 through

16  10 are liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

17                    **FOURTH CLAIM FOR RELIEF**

18                       **ASSAULT & BATTERY**

19      **As Against Defendants TONI MCBRIDE, CITY OF LOS ANGELES**

20                   **and DOE Defendants 1 through 10**

21       63.   Plaintiff ESTATE OF DANIEL HERNANDEZ, by and through his

22  successors in interest,  reallege and incorporate the foregoing paragraphs as if set

23  forth herein.

24       64.   This cause of action arises under the general laws and Constitution of the

25  State of California.  Plaintiffs have complied with the California Tort Claims Act

26  requirements to present a claim for damages. Plaintiffs expect that these claims will

27  be denied outright by the City of Los Angeles or the claims will be denied by the

28

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  operation of law.  At that point, Plaintiffs will amend their complaint to allege the

2  denial of said claims.

3      65.    Defendant TONI MCBRIDE assaulted and battered Daniel Hernandez,

4  as pleaded herein above, when said Defendants acted intentionally to cause, and did

5  cause, said non-consensual, unprivileged, unjustified, excessive, harmful or offensive

6  contact to the person of Daniel Hernandez by unreasonably and unjustly shooting and

7  killing Daniel Hernandez.

8      66.    These acts were undertaken by Defendant TONI MCBRIDE

9  intentionally and without justification.

10     67.    As a result of these deliberate and unjustified acts undertaken by

11  Defendant TONI MCBRIDE, Daniel Hernandez endured great physical and

12  emotional pain and suffering.

13     68.    These deliberate and unjustified acts undertaken by Defendant TONI

14  MCBRIDE and DOES 1 through 10 were willful and done with a deliberate disregard

15  for the rights and safety of Daniel Hernandez and, therefore, warrant the imposition

16  of punitive damages as to Defendant TONI MCBRIDE.

17     69.    Defendant CITY LOS ANGELES is liable to Plaintiffs for the acts of

18  their public employees, the individual Defendants herein, for conduct and/or

19  omissions herein alleged, pursuant to the doctrine of *respondeat superior*, codified at

20  California Government Code § 815.2.

21              **FIFTH CLAIM FOR RELIEF**

22                **WRONGFUL DEATH**

23          **As Against Defendants TONI MCBRIDE,**

24     **CITY OF LOS ANGELES and DOE Defendants 1 through 10**

25     70.    Plaintiffs MANUEL HERNANDEZ, MARIA HERNANDEZ and

26  M.L.H reallege and incorporate the foregoing paragraphs as if set forth herein.

27     71.    This cause of action arises under the general laws and Constitution of the

28  State of California.  Plaintiffs have complied with the California Tort Claims Act

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1   requirements to present a claim for damages. Plaintiffs timely filed their tort claims
2   with the City of Los Angeles and said claims have been denied outright by the City of
3   Los Angeles or the claims have been deemed denied by the operation of law.

4   72.    Plaintiffs bring this claim for wrongful death pursuant to the provisions
5   of Code of Civil Procedure § 377.10 (b) and § 377.60.

6   73.    Defendant TONI MCBRIDE, and DOES 1 through 10, while working as
7   police officers of the LAPD, and acting within the course and scope of their duties,
8   employed negligent tactics and intentionally and/or without due care shot Daniel
9   Hernandez.  The shooting resulted from said defendants' unsafe, improper and
10  negligent tactics.  As a result of these intentional acts and negligence, Daniel
11  Hernandez suffered serious injuries and lost his life.  Said defendants had no legal or
12  reasonable justification for their use of deadly force.

13  74.    On and for some time before April 22, 2020, Defendants CITY and
14  DOES 6-10, inclusive, and each of them, negligently and carelessly employed,
15  retained, trained, supervised, assigned, controlled and negligently and carelessly
16  failed to adequately discipline Defendants MCBRIDE, DOES 1-5, and each of them,
17  at all times materially herein knew or reasonably should have known had dangerous
18  and dishonest propensities for abusing their authority and for using excessive and
19  punitive force and violence and for falsifying their accounts and reports of their
20  actions, especially where unreasonable force (deadly and less than deadly) was used
21  by said Defendants.

22  75.    As a direct and proximate result of the conduct of Defendant TONI
23  MCBRIDE and DOES 1 through 10, Daniel Hernandez lost his life.  Plaintiffs have
24  been deprived of the life-long love, affection, comfort, moral and economic support,
25  and society of Daniel Hernandez, and will continue to be so deprived for the
26  remainder of their natural lives.  Plaintiffs were further caused to pay funeral and
27  burial expenses as a result of the conduct of Defendant TONI MCBRIDE.

28

29

76.     Defendant CITY OF LOS ANGELES is vicariously liable for the wrongful, intentional and/or negligent acts of Defendant TONI MCBRIDE, and DOES 1 through 10, pursuant to California Government Code § 815.2, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

## SIXTH CLAIM FOR RELIEF

**Civil Rights Violations (Cal. Civ. Code §§ 51.7 and 52.1)**

**As Against Defendants CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, TONI MCBRIDE and DOE Defendants 1 through 10**

77.     Plaintiffs reallege and incorporate the foregoing paragraphs as if set forth herein.

78.     This cause of action arises under the general laws and Constitution of the State of California, including California Civil Code § 51.7 and § 52.1 and California Government Code §§820 and 815.2.  Plaintiffs have complied with the California Tort Claims Act requirements to present a claim for damages. Said Plaintiffs expect that this claim will be denied outright by the City of Los Angeles or the claim will be denied by the operation of law.  At that point, the present Plaintiffs will amend the complaint to allege the denial of said tort claim.

79.     As a result of the conduct of Defendant TONI MCBRIDE, and DOES 1 through 10, by the use of threats, intimidation, and coercions, interfered with Plaintiffs exercise and enjoyment of the rights secured by the United States Constitution and other Federal laws, the Constitution and laws of the State of California, and their rights under California Civil Code §§ 51.7 and 52.1.

80.     On or about the above stated dates, and sometime prior thereto, Defendants and each of them violated DANIEL HERNANDEZ's civil rights, guaranteed by the United States Constitution, federal law, the California Constitution and the laws of the State of California thereby violating California Civil Code

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  Sections 51.7 and 52.1 (b). Plaintiff asserts the violations of DANIEL

2  HERNANDEZ'S rights pursuant to California's Survival Statute, Code of Civil

3  Procedure § 377.30 et. seq.

4      81.    The California Civil Code § 52.1(b) authorizes a private right of action

5  for damages to any person whose constitutional rights are violated. Moreover, "a

6  successful claim for excessive force under the Fourth Amendment provides the basis

7  for a successful claim under § 52.1." *Chaudhry v. City of Los Angeles*, 751 F.3d

8  1096, 1105-06 (9th Cir. 2014); citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th

9  Cir.2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as

10  under § 1983."); *Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968, 976 (2013) ("an

11  unlawful [seizure]—when accompanied by unnecessary, deliberate and excessive

12  force—is [] within the protection of the Bane Act").

13      82.    Defendants' actions as alleged herein violated Daniel Hernandez's

14  constitutional rights against unreasonable searches and seizures and rights to familial

15  association, all of which are protected by the Constitution of the State of California.

16      83.    As a proximate result of the acts of these Defendants, and each of them,

17  Daniel Hernandez was made to lose his life without cause or justification.

18      84.    All of the above acts and omissions of Defendant TONI MCBRIDE

19  were wilful, wanton, malicious and oppressive, thereby justifying the awarding of

20  exemplary and punitive damages as to these Defendants.

21      85.    Defendant TONI MCBRIDE, CITY OF LOS ANGELES and DOES 1

22  through 10, and each of them, for their respective acts and violations pleaded herein

23  above, are liable to Plaintiff ESTATE OF DANIEL HERNANDEZ for damages,

24  penalties and attorneys' fees as provided in California Civil Code sections 52 and

25  52.1.

26  ///

27  ///

28  ///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SEVENTH CLAIM FOR RELIEF

## (VIOLATION OF 42 U.S.C. § 1985 (3))

### (By Plaintiffs against All Individual Defendants)

86.    Plaintiffs refer to and replead each and every allegation contained in paragraphs 1 through 85 of this complaint, and by this reference incorporates and makes each a part hereof.

87.    Commencing April 22, 2020 and thereafter, Defendant Officer TONI MCBRIDE and two or more of the DOE defendants identified herein, in the State of California, County of Los Angeles, by reason of their animus against minorities, including Hispanic-Americans of which class DANIEL HERNANDEZ belongs, invidiously discriminated against DANIEL HERNANDEZ in that they willfully and maliciously assaulted and murdered DANIEL HERNANDEZ without just cause and then lied about the facts, by false accounts and falsifying the reports. TONI MCBRIDE and DOES 1-10 demonstrated invidious discrimination towards DANIEL HERNANDEZ as a Hispanic-American, and conspired together to act and fail to act in that they willfully failed to intervene in the use of deadly force, failed to discipline and approved of their inferior officers' actions, failed to investigate properly and independently the facts of the incident, maliciously falsified reports and failed to disclose all inculpatory evidence in favor of DANIEL HERNANDEZ, as hereinbefore alleged, for the purpose of impeding, hindering, obstructing and defeating the due course of justice in the State of California and County of Los Angeles.

88.    Said defendants, and each of them, purposefully, under color of law, planned and conspired to deny Plaintiffs' decedent the equal protection of the laws by (a) denying the right to be free from unreasonable search and seizure; and (b) denying the right not to be deprived of property and liberty without due process of law.

89.   By virtue of the foregoing, Defendants, and each of them, violated 42 U.S.C § 1985 (2).

90.   As a direct and proximate result of the foregoing, Plaintiffs have been damaged as recited above and demand and are entitled to the damages recited in the First Cause of Action, including but not limited to, general and punitive damages (except as to Defendant CITY) and attorney's fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants as follows:

A.   For compensatory damages, including pre-death pain and suffering damages, general damages and special damages, and statutory damages for violation of the laws and Constitution of the United States and State of California, in an amount to be determined at trial;

B.   For punitive damages against Defendant TONI MCBRIDE and DOES 1 through 10, pursuant to 42 U.S.C. § 1983, and any other applicable laws or status, in an amount sufficient to deter and make an example of each non-government entity Defendant;

C.   For prejudgment interest to be determined at trial;

D.   For reasonable costs of this suit and attorneys' fees, including attorneys' fees pursuant to 42 U.S.C. § 1988; and

///
///
///
///
///
///
///
///

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1

2

E.      For such further other relief as the Court may deem just, proper, and
appropriate.

3

4

Dated: September 8, 2020                CASILLAS & ASSOCIATES

5

6

7

8

9

By:   */s/ Arnoldo Casillas*
ARNOLDO CASILLAS
DENISSE O. GASTÉLUM
Attorneys for Plaintiffs, ESTATE OF DANIEL
HERNANDEZ, MANUEL HERNANDEZ,
MARIA HERNANDEZ

10

11

Dated: September 8, 2020                MKRTCHYAN LAW

12

13

14

15

By: */ s/ Narine Mkrtchyan*
NARINE MKRTCHYAN
Attorneys for M.L.H. – a minor - by and
through her guardian ad litem CLAUDIA
SUGEY CHAVEZ

16

17

18

19

20

21

22

23

24

25

26

27

28

34

**DEMAND FOR JURY TRIAL**

COME NOW Plaintiffs ESTATE OF DANIEL HERNANDEZ, by and through successors in interest, Manuel Hernandez and Maria Hernandez, MANUEL HERNANDEZ, individually, MARIA HERNANDEZ, individually, and M.L.H. by and through her guardian ad litem CLAUDIA SUGEY CHAVEZ as successor in interest to decedent DANIEL HERNANDEZ, and hereby demand trial by jury.


Dated: September 8, 2020          CASILLAS & ASSOCIATES

By:   /s/ Arnoldo Casillas
ARNOLDO CASILLAS
DENISSE O. GASTÉLUM
Attorneys for Plaintiffs, ESTATE OF DANIEL
HERNANDEZ, MANUEL HERNANDEZ,
MARIA HERNANDEZ


Dated: September 8, 2020          MKRTCHYAN LAW

By: / s/ Narine Mkrtchyan
NARINE MKRTCHYAN
Attorneys for M.L.H. – a minor - by and
through her guardian ad litem CLAUDIA
SUGEY CHAVEZ as successor in interest

**CONSOLIDATED AMENDED COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**