ARNOLDO CASILLAS, ESQ., SBN 158519
DENISSE O. GASTÉLUM, ESQ., SBN 282771
**CASILLAS & ASSOCIATES**
3777 Long Beach Blvd., Third Floor
Long Beach, CA 90807
Tel:  (562) 203-3030
Fax: (323) 725-0350
Email: acasillas@casillaslegal.com
           dgastelum@casillaslegal.com

Attorneys for Plaintiffs ESTATE OF DANIEL HERNANDEZ, by and through successors in interest, Manuel Hernandez and Maria Hernandez; MANUEL HERNANDEZ, individually; MARIA HERNANDEZ, individually

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF DANIEL HERNANDEZ, by and through successors in interest, Manuel Hernandez, Maria Hernandez and M.L.H.; MANUEL HERNANDEZ, individually; MARIA HERNANDEZ, individually; M.L.H., a minor, by and through her guardian ad litem CLAUDIA SUGEY CHAVEZ,<br><br>                    Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT; TONI MCBRIDE; and DOES 1 to 10,<br><br>                    Defendants. | **CASE NO.: 2:20-cv-04477-SB-KS**<br>[*Assigned to the Hon. Stanley Blumenfeld, Jr., Courtroom 6C*]<br><br>**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:    August 6, 2021<br>Time:    8:30 a.m.<br>Dept:    Courtroom 6C |

Plaintiffs Estate of Daniel Hernandez, by and through successors in interest, Manuel Hernandez and Maria Hernandez; Plaintiffs Manuel Hernandez and Maria Hernandez, individual (hereinafter "Plaintiffs") hereby respectfully submit their Statement of Genuine Disputes pursuant to L.R. 56-2 in Opposition to Defendants Toni Mcbride, City Of Los Angeles and Los Angeles Police Department's Statement of Uncontroverted Facts and Conclusions of Law [Dkt 83-1].

| I. Officer McBride's Actions Were Objectively Reasonable | | | |
|---|---|---|---|
| **DEFS' SUF No.** | **UNCONTROVERTED FACTS** | **EVIDENTIARY SUPPORT** | **PLAINTIFFS' RESPONSE** |
| 1. | On April 22, 2020, at approximately 5:36 p.m., Officers Toni McBride and Shuhei Fuchigami ("Officers") were en route to a call for service when they observed a crowd gathered around a traffic collision in the vicinity of the intersection of San Pedro and 32nd Street in Los Angeles. | Declaration of Toni McBride ("McBride Dec.") at ¶ 2; Digital In-Car Video recorder ("DICV"), attached as Exhibit B to the McBride Dec. at 0:00:10-0:01:09. | Undisputed. |
| 2. | In response to observing the crowd, the Officers decided to respond to the collision and provide assistance. | McBride Dec. at ¶ 2. | Undisputed. |
| 3. | Officer McBride was wearing a Los Angeles Police Department uniform at all relevant times. | McBride Dec. at ¶ 3; McBride Dec., DICV, Ex. B at 0:01:30-01:32. | Undisputed. |

| | | | |
|---|---|---|---|
| 4. | Upon arrival on scene, Officer McBride observed multiple individuals screaming and yelling, several vehicles that had been severely damaged with people still in the vehicles, with approximately fifty people in the vicinity. | McBride Dec. at ¶ 3; McBride Dec., DICV, Ex. B at 0:01:20-01:32; Body worn video ("BWV") of Officer McBride, attached as Exhibit A to the McBride Dec. at 0:01:51-0:01:56; Photos of the scene, attached as Exhibit D to the Declaration of Colleen A. Smith ("Smith Dec."). | Disputed to the extent that the Digital In-Car Video does not show 50 people, rather the video shows at least 15-20 people on the east sidewalk and at least 10-15 on the west sidewalk south of Mr. Hernandez' vehicle.<br><br>Declaration of Denisse O. Gastélum ("Gastélum Decl.") at ¶ 6; Digital In-Car Video recorder ("DICV"), attached as Exhibit 5 at 01:21-02:22. |
| 5. | Officer McBride was advised immediately upon exiting the patrol vehicle that there was a "crazy guy with a knife" in the black truck who was threatening to hurt both himself and others. | McBride Dec. at ¶6; McBride Dec., DICV, Ex. B. at 0:01:25-0:01:34. | Undisputed. |
| 6. | Officer McBride observed an individual (later identified as Hernandez) rummaging through the middle console of the truck and based on radio broadcast information and reports from individuals on scene, believed | McBride Dec. at ¶ 7. | Disputed to the extent that Officer McBride's belief is based on speculation. |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| | Hernandez to be the individual armed with a weapon, who had threatened himself and others. | | |
| 7. | Officer McBride then observed Hernandez climb out of the driver's side window of the truck. | McBride Dec. at ¶ 8; McBride Dec., DICV, Ex. B at 0:02:23-02:25. | Undisputed. |
| 8. | Officer McBride called to Hernandez "Hey man, let me see your hands. Let me see your hands, man." | McBride Dec. at ¶ 9; McBride Dec., BWV, Ex. A at 0:02:48-02:54. | Undisputed. |
| 9. | Moments later, Hernandez appeared from behind the rear of the truck and began advancing on Officer McBride, while holding a knife in his hands. | McBride Dec. at ¶ 10; McBride Dec., BWV, Ex. A at 0:02:54-02:55; McBride Dec., DICV, Ex. B at 0:02:29-0:02:32; Cellphone video taken by Jose Pineda ("Pineda Video") at 0:00:05-0:00:11, attached as Exhibit C to the Smith Dec. | Disputed to the extent that Mr. Hernandez held a box cutter, not a knife. Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 02:31-0:02:38. |
| 10. | Officer McBride ordered Hernandez to "Stay right there. Drop the knife," while simultaneously gesturing with her left hand for Hernandez to stop. | McBride Dec. at ¶ 10; McBride Dec., BWV, Ex. A at 0:02:55-02:57; McBride Dec., DICV, Ex. B at 0:02:35-0:02:36. | Undisputed. |
| 11. | Hernandez continued advancing on Officer | McBride Dec. at ¶ 10; McBride Dec., BWV, | Undisputed. |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| | McBride with the knife in his hand despite McBride's directives to stop and drop the knife. | Ex. A at 02:57-02:58; McBride Dec., DICV, Ex. B. at 0:02:36-0:02:37; Smith Dec., Pineda Video, Ex. C at 0:00:11-0:00:16. | |
| 12. | As Hernandez continued to advance on Officer McBride, the Officer began backing up and directed Hernandez to "Drop the knife! Drop the knife!" | McBride Dec. at ¶ 11; McBride Dec., BWV, Ex. A at 02:58-03:01; McBride Dec., DICV, Ex. B. at 0:02:36-0:02:37. | Undisputed. |
| 13. | Hernandez was under the influence of methamphetamines during the subject incident. | McBride Dec. at ¶ 12; Toxicology Report, attached as Exhibit J to the Declaration of Kevin Gilbert ("Gilbert Dec."). | Disputed.<br><br>Plaintiffs object to Defendants' SUF No. 13 on the grounds that it is not relevant. Fed. R. Evid. 401, 402. Plaintiffs concede that Mr. Hernandez's behavior was suggestive of being in an altered state; however, whether the altered state was due to being under the influence or due to a mental illness is not relevant as Plaintiffs do not dispute the resulting behavior Mr. Hernandez engaged in nor will Defendants be able to prove that Officer McBride *actually knew* that Mr. Hernandez was under the influence at the time of the shooting. |

- 4 -

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| | | | Ninth Circuit authority is clear that a decedent's intoxication is not relevant to the reasonableness inquiry where an officer is unaware of such facts. *Hayes v. County of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013) (refusing to consider suspect's intoxication in determining whether defendant deputies' use of deadly force was objectively reasonable where deputies were not aware of intoxication). |
| 14. | Officer McBride suspected Hernandez was under the influence of drugs – likely either methamphetamine or PCP – based upon her observations of Hernandez being shirtless, sweating profusely, acting jittery and agitated, refusing to comply with directives while also displaying an overly aggressive behavior. | McBride Dec. at ¶ 12; Gilbert Dec., Toxicology Report, Ex. J. | Disputed.<br><br>Plaintiffs further object to Defendants' SUF No. 14 on the grounds that it calls for speculation; Officer McBride's belief is based on speculation.<br><br>Plaintiffs further object to Defendants' SUF No. 14 on the grounds that it is not relevant. Fed. R. Evid. 401, 402. Plaintiffs concede that Mr. Hernandez's behavior was suggestive of being in an altered state; |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| | | | however, whether the altered state was due to being under the influence or due to a mental illness is not relevant as Plaintiffs do not dispute the resulting behavior Mr. Hernandez engaged in nor will Defendants be able to prove that Officer McBride *actually knew* that Mr. Hernandez was under the influence at the time of the shooting.<br><br>Ninth Circuit authority is clear that a decedent's intoxication is not relevant to the reasonableness inquiry where an officer is unaware of such facts. *Hayes v. County of San Diego*, 736 F.3d 1223, 1232-33 (9th Cir. 2013) (refusing to consider suspect's intoxication in determining whether defendant deputies' use of deadly force was objectively reasonable where deputies were not aware of intoxication). |
| 15. | In response to Officer McBride's further orders to "drop the knife," Hernandez responded "I'm not going to drop | McBride Dec. at ¶ 14. | Disputed to the extent that Mr. Hernandez's response is in audible and Officer McBride's belief is based on speculation as |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| | this knife." | | she was not certain what she heard Mr. Hernandez say.<br><br>Gastélum Decl. at ¶ 3; Statement of Officer McBride to Force Investigation Division ("McBride Statement"), attached as Exhibit 2 at 34:24-25. |
| 16. | Hernandez continued to advance on Officer McBride, retaining the knife in his hand, and holding his arms in a confrontational posture. | McBride Dec., BWV, Ex. A at 02:58-03:01; McBride Dec., DICV, Ex. B at 0:02:36-0:02:37; Smith Dec., Pineda Video, Ex. C at 0:00:11-0:00:16; Still photo from Jose Pineda video ("Pineda Photo"), attached as Exhibit E to the Smith Dec. | Disputed to the extent of the characterization of a "confrontational pose."<br><br>At the moment she fired the initial two rounds, Mr. Hernandez was standing in the middle of the roadway facing Officer McBride at a distance from 41 to 44 feet and walking towards her with his arms extended out to his sides, not gesturing aggressively.<br><br>Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:03; Gastélum Decl. at ¶ 9, Lantini Report, attached as Exhibit 8 at pg. 7. |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| 17. | As Hernandez continued to advance on Officer McBride, she again ordered him to "Drop it!" | McBride Dec. at ¶ 16; McBride Dec., BWV, Ex. A at 03:01-03:02. | Undisputed. |
|---|---|---|---|
| 18. | Officer McBride's decision to use lethal force was based upon her belief that Hernandez posed an imminent threat to both her life and the lives of the nearby bystanders. | McBride Dec. at ¶ 23. | Disputed to the extent that Officer McBride's belief is based on speculation.

Further disputed to the extent that Officer's McBride's stated justification for the initial two rounds is contradicted by the evidence.

Officer McBride stated justification for the initial two rounds is contradicted by the evidence. Officer McBride stated that Mr. Hernandez was walking at a "very, very fast pace" towards her. While the video does show that Mr. Hernandez was walking towards Officer McBride, the video does not support her characterization that he was walking at a "very, very fast pace."

Gastélum Decl. at ¶ 3; McBride Statement, |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

attached as Exhibit 2 at 41:16-25, 42:1-2; Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:03.

Officer McBride's justification for firing the first two rounds was that she believed it would be easy for Mr. Hernandez to close the distance quickly and that he could have killed her or a bystander.  Officer McBride claims to have believed the distance between her and Mr. Hernandez was 15 feet. To the contrary, when Officer McBride fired the initial two rounds, Mr. Hernandez was 41 feet away from Officer McBride and 26 feet away from the closest citizen to Mr. Hernandez.

Gastélum Decl. at ¶ 3; McBride Statement, attached as Exhibit 2 at 44:25, 45:2-21, 35:3-11, 15:2-25; Gastélum Decl. at ¶ 8, Noble Report, attached as Exhibit 7 at pg. 15, parag. 44, pg. 12, parag. 32;  Gastélum Decl. at ¶ 9, Report prepared by Plaintiffs' Firearms

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| | | | Criminalist/Shooting Reconstruction Expert Lance Martini ("Lantini Report"), attached as Exhibit 8 at pg. 7. |
|---|---|---|---|
| 19. | When Hernandez again refused to comply and continued advancing on the Officer, Officer McBride fired two rounds at Hernandez. | McBride Dec. at ¶ 17; McBride Dec., BWV, Ex. A at 03:02-03:04; McBride Dec., DICV, Ex. B. at 0:02:38-0:02:40; Smith Dec., Pineda Video, Ex. C at 0:00:16-0:00:17. | Undisputed. |
| 20. | Hernandez initially fell to the ground, but immediately came back up into a crouched, sprinter's stance while screaming in rage. | McBride Dec. at ¶ 17; McBride Dec., BWV, Ex. A at 03:04-03:05; McBride Dec., DICV, Ex. B. at 0:02:40-0:02:41; Smith Dec., Pineda Video, Ex. C at 0:00:19. | Disputed to the extent of the characterization of Mr. Hernandez's body positioning following the first two rounds.<br><br>After the second round hit him, Mr. Hernandez fell to the pavement and began to raise his torso upward. Mr. Hernandez's knees came slightly off the ground, but his right hand which held the boxcutter was still on the ground when Officer McBride yelled, "Drop it," then fired an additional two more shots at Mr. Hernandez.<br><br>Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 02:41; |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| | | | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:05. |
|---|---|---|---|
| 21. | Officer McBride again ordered Hernandez to "Drop it!" | McBride Dec. at ¶ 18; McBride Dec., BWV, Ex. A at 3:05. | Undisputed. |
| 22. | As Hernandez again refused to comply and continued his advance, Officer McBride fired a third and fourth round at him. | McBride Dec. at ¶ 19; McBride Dec., BWV, Ex. A at 3:05-3:07; McBride Dec., DICV, Ex. B. at 0:02:41-0:02:42; Smith Dec., Pineda Video, Ex. C at 0:00:20-0:00:21. | Disputed; Mr. Hernandez did not continue to advance at Officer McBride.<br><br>Mr. Hernandez's knees came slightly off the ground, but his right hand which held the boxcutter was still on the ground when Officer McBride yelled, "Drop it," then fired an additional two more shots at Mr. Hernandez.<br><br>Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 02:41; Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:05. |
| 23. | Hernandez fell to his back, quickly rotating to his side, still holding the knife, while appearing to get up and continue his advance toward Officer | McBride Dec. at ¶ 19; McBride Dec., BWV, Ex. A at 3:07-3:08; McBride Dec., DICV, Ex. B. at 0:02:42-0:02:44; Smith Dec., Pineda Video, Ex. C | Disputed to the extent of the characterization of Mr. Hernandez's body positioning following the third and fourth rounds. |

- 11 -

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| | McBride. | at 0:00:22. | |
|---|---|---|---|
| | | | The third round struck Mr. Hernandez's thigh and he fell to the pavement again. Officer McBride's fourth round was fired and struck Mr. Hernandez after he fell to the pavement. In fact, Mr. Hernandez was on his back on the pavement at the moment of the fourth shot was fired. By this point, Mr. Hernandez had collapsed to the pavement with his back towards Officer McBride when she fired the fifth round. The fifth round struck Mr. Hernandez's upper back. |
| | | | Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 02:42-02:02:43; Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:03-3:07. Gastélum Decl. at ¶ 10, Chapman Report, attached as Exhibit 9 at pg. 4, Opinion No. 4, subsect. e. |
| 24. | Officer McBride then fired a fifth and sixth round at Hernandez. | McBride Dec. at ¶ 20; McBride Dec., BWV, Ex. A at 3:08-3:09; McBride Dec., DICV, | Undisputed. |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| | | Ex. B. at 0:02:44-0:02:45; Smith Dec., Pineda Video, Ex. C at 0:00:23. | |
|---|---|---|---|
| 25. | Hernandez still had the knife in his hand when officers were finally able to handcuff him. | McBride Dec. at ¶ 22; McBride Dec., BWV, Ex. A at 04:55-05:01. | Disputed to the extent Mr. Hernandez held a box cutter. |

| II. Officer McBride is Entitled to Qualified Immunity | | | |
|---|---|---|---|
| **DEFS' SUF No.** | **UNCONTROVERTED FACTS** | **EVIDENTIARY SUPPORT** | **PLAINTIFFS' RESPONSE** |
| 26. | As discussed above, any reasonable officer would have concluded that deadly force was appropriate in response to Hernandez's actions, which included aggressively advancing on Officer McBride while brandishing a knife and disobeying orders. | See Defendants' above SUFs (1-25) and evidentiary support, which is incorporated herein by reference. | See Plaintiffs' above responses and objections to Defendants' SUFs (1-25) and evidentiary support, which is incorporated herein by reference. |

| III. Plaintiffs' Claims Under the Fourteenth Amendment Fails, as Officer McBride's Actions did not "Shock the Conscience" | | | |
|---|---|---|---|
| **DEFS' SUF No.** | **UNCONTROVERTED FACTS** | **EVIDENTIARY SUPPORT** | **PLAINTIFFS' RESPONSE** |
| 27. | As discussed above, any reasonable officer would have concluded that deadly force was appropriate in response | See Defendants' above SUFs (1-25) and evidentiary support, which is incorporated herein by | See Plaintiffs' above responses and objections to Defendants' SUFs (1-25) and evidentiary support, which is |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| DEFS' SUF No. | UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT | PLAINTIFFS' RESPONSE |
|---|---|---|---|
| | to Hernandez's actions, which included aggressively advancing on Officer McBride while brandishing a knife and disobeying orders. | reference. | incorporated herein by reference. |
| 28. | Officer McBride's intent in subduing Hernandez was solely to protect her life and the lives of the surrounding bystanders from the threat that Hernandez posed. | McBride Dec. at ¶¶ 7, 9, 13, 15, 16, 19, 23. | See Plaintiffs' above responses and objections to Defendants' SUFs (1-25) and evidentiary support, which is incorporated herein by reference. |

| IV.    Plaintiffs' *Monell* Claim Fails as a Matter of Law | | | |
|---|---|---|---|
| **DEFS' SUF No.** | **UNCONTROVERTED FACTS** | **EVIDENTIARY SUPPORT** | **PLAINTIFFS' RESPONSE** |
| 29. | As discussed above, any reasonable officer would have concluded that deadly force was appropriate in response to Hernandez's actions, which included aggressively advancing on Officer McBride while brandishing a knife and disobeying orders. | See Defendants' above SUFs (1-25) and evidentiary support, which is incorporated herein by reference. | See Plaintiffs' above responses and objections to Defendants' SUFs (1-25) and evidentiary support, which is incorporated herein by reference. |
| 30. | Plaintiffs have never identified any policy or custom of the City of Los Angeles or the Los Angeles Police Department that they | Gilbert Dec. at ¶¶ 4, 5; Gilbert Dec., Ex. I, Plaintiff M.L.H.'s Responses to Defendant Toni McBride's | |

- 14 -

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| | | Interrogatories, Response to Interrogatory No. 5 at pp. 8-9. | |
|---|---|---|---|
| 31. | Plaintiffs have never identified any policy maker at the City of Los Angeles or the Los Angeles Police Department that would or could have ratified Officer McBride's actions in this case. | Gilbert Dec., Ex. F, Complaint; Gilbert Dec. at ¶¶ 4, 5; Gilbert Dec., Ex. I, Plaintiff M.L.H.'s Responses to Defendant Toni McBride's Interrogatories, Response to Interrogatory No. 7 at pp. 9-11. | |
| 32. | Plaintiffs have never identified any specific inadequate training or customs that they believe contributed to the incident giving rise to this litigation. | Gilbert Dec. at ¶¶ 4, 5; Gilbert Dec., Ex. I, Plaintiff M.L.H.'s Responses to Defendant Toni McBride's Interrogatories, Response to Interrogatory No. 5 at pp. 8-9. | |

| V.  Plaintiffs' Conspiracy Claim is Factually and Legally Unsupported | | | |
|---|---|---|---|
| **DEFS' SUF No.** | **UNCONTROVERTED FACTS** | **EVIDENTIARY SUPPORT** | **PLAINTIFFS' RESPONSE** |
| 33. | As discussed above, any reasonable officer would have concluded that deadly force was appropriate in response to | See Defendants' above SUFs (1-25) and evidentiary support, which is incorporated herein | See Plaintiffs' above responses and objections to Defendants' SUFs (1-25) and evidentiary support, which is |

PLAINTIFFS' STATEMENT OF GENUINE DISPUTES

| DEFS' SUF No. | UNCONTROVERTED FACTS | EVIDENTIARY SUPPORT | PLAINTIFFS' RESPONSE |
|---|---|---|---|
|  | Hernandez's actions, which included aggressively advancing on Officer McBride while brandishing a knife and disobeying orders. | by reference. | incorporated herein by reference. |
| 34. | Plaintiffs have never identified any person that Officer McBride allegedly conspired with to deprive Hernandez of his rights. | Gilbert Dec., Ex. F, Complaint at ¶ 87; Gilbert Dec. at ¶¶ 4, 5; Gilbert Dec., Ex. I, Plaintiff M.L.H.'s Responses to Defendant Toni McBride's Interrogatories, Response to Interrogatory No. 7 at pp. 9-11. |  |
| 35. | A knife was in Hernandez's hands at the time force was utilized. | McBride Dec. at ¶ 22; McBride Dec., BWV, Ex. A at 04:55-05:01. |  |

| VI.    Plaintiffs' Claims for State Law Violations are Precluded Since the Officer's Actions were Lawful | | | |
|---|---|---|---|
| **DEFS' SUF No.** | **UNCONTROVERTED FACTS** | **EVIDENTIARY SUPPORT** | **PLAINTIFFS' RESPONSE** |
| 36. | As discussed above, any reasonable officer would have concluded that deadly force was appropriate in response to Hernandez's actions, which included aggressively advancing on Officer McBride while | See Defendants' above SUFs (1-25) and evidentiary support, which is incorporated herein by reference. | See Plaintiffs' above responses and objections to Defendants' SUFs (1-25) and evidentiary support, which is incorporated herein by reference. |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| VI.    Plaintiffs' Claims for State Law Violations are Precluded Since the Officer's Actions were Lawful | | | |
|---|---|---|---|
| **DEFS' SUF No.** | **UNCONTROVERTED FACTS** | **EVIDENTIARY SUPPORT** | **PLAINTIFFS' RESPONSE** |
| | brandishing a knife and disobeying orders. | | |

| VII.    Plaintiffs' Ralph and Bane Act Claims Fail as a Matter of Law | | | |
|---|---|---|---|
| **DEFS' SUF No.** | **UNCONTROVERTED FACTS** | **EVIDENTIARY SUPPORT** | **PLAINTIFFS' RESPONSE** |
| 37. | As discussed above, any reasonable officer would have concluded that deadly force was appropriate in response to Hernandez's actions, which included aggressively advancing on Officer McBride while brandishing a knife and disobeying orders. | See Defendants' above SUFs (1-25) and evidentiary support, which is incorporated herein by reference. | See Plaintiffs' above responses and objections to Defendants' SUFs (1-25) and evidentiary support, which is incorporated herein by reference. |
| 38. | Plaintiffs have offered no facts to support the violation of any right of Hernandez's. | Gilbert Dec., Ex. F, Complaint at ¶ 82; Gilbert Dec. at ¶¶ 4, 5; Gilbert Dec., Ex. I, Plaintiff M.L.H.'s Responses to Defendant Toni McBride's Interrogatories, Response to Interrogatory No. 7 at pp. 9-11. | See Plaintiffs' above responses and objections to Defendants' SUFs (1-25) and evidentiary support, which is incorporated herein by reference. |

- 17 -

| | | | |
|---|---|---|---|
| 39. | Plaintiffs have offered no facts to support that Officer McBride had any specific intent to deprive Hernandez of any alleged rights. | Gilbert Dec., Ex. F, Complaint at ¶¶ 82-84; McBride Dec. at ¶ 23; Gilbert Dec. at ¶¶ 4, 5; Gilbert Dec., Ex. I, Plaintiff M.L.H.'s Responses to Defendant Toni McBride's Interrogatories, Response to Interrogatory No. 7 at pp. 9-11. | See Plaintiffs' above responses and objections to Defendants' SUFs (1-25) and evidentiary support, which is incorporated herein by reference. |
| 40. | Plaintiffs have offered no facts to support that Officer McBride's actions against Hernandez were the result of Hernandez's membership in a protected class. | Gilbert Dec., Ex. F, Complaint at ¶¶ 82-84; McBride Dec. at ¶ 23; Gilbert Dec. at ¶¶ 4, 5; Gilbert Dec., Ex. I, Plaintiff M.L.H.'s Responses to Defendant Toni McBride's Interrogatories, Response to Interrogatory No. 7 at pp. 9-11. | See Plaintiffs' above responses and objections to Defendants' SUFs (1-25) and evidentiary support, which is incorporated herein by reference. |

## PLAINTIFFS' UNDISPUTED FACTS

Plaintiffs also hereby submit the following material facts which are not addressed in Plaintiffs' motion:

| Pltf.'s SUF No. | Fact | Supporting Evidence |
|---|---|---|
| 1. | On April 22, 2020, at about 5:30 PM, Daniel Hernandez was driving north on San Pedro Street in Los Angeles, California when Mr. Hernandez's truck rear ended a | Declaration of Denisse O. Gastélum ("Gastélum Decl.") at ¶ 6; Digital In-Car Video recorder ("DICV"), attached |

| | | | |
|---|---|---|---|
| | | vehicle then collided with vehicle driven on the opposite side of the roadway. | as Exhibit 5 at 00:10-01:09. |
| | 2. | Bystander Veronica Nava observed Mr. Hernandez outside of his truck cutting his forearm with a box cutter in attempt to commit suicide. | Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 01:25-01:34; Gastélum Decl. at ¶ 7, Body-Word Video ("BWV") of Officer McBride, attached as Exhibit 6 at 01:49-2:08; Gastélum Decl. at ¶ 8, Report prepared by Plaintiffs' Police Practices Expert Jeff Noble ("Noble Report"), attached as Exhibit 7 at pg. 7, parag. 14 |
| | 3. | Ms. Nava called 9-1-1 and informed the dispatcher what she saw. | Gastélum Decl. at ¶ 8, Noble Report, attached as Exhibit 7 at pg. 7, parag. 14. |
| | 4. | Moments after the collision, Officer McBride and her partner, Officer Fuchigami, were driving along San Pedro when they observed the traffic collision and drove towards the scene of the collision. | Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 00:10-01:09. |
| | 5. | As Officer McBride and Officer Fuchigami arrived to the scene of the collision they heard the dispatcher radio that there was an "assault with a deadly weapon suspect" at the scene, that the suspect was armed with a knife, and the suspect's vehicle was a black Chevrolet truck. | Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 01:09-01:24. |
| | 6. | Ms. Nava informed Officer McBride and Officer Fuchigami that Mr. Hernandez was armed with a knife and pointed to the backseat of the truck where Mr. Hernandez was sitting. | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 2:00-2:08 |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| 7. | Officer McBride asks Ms. Nava, "Why does he want to hurt himself?" | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 2:00-2:08 |
|---|---|---|
| 8. | Ms. Nava responded, "I don't know." | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 2:00-2:08 |
| 9. | Officer McBride drew her handgun and asked her partner if they had less-lethal. | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 2:08-2:38 |
| 10. | Officer Fuchigami radioed for assistance. | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 2:08-2:38 |
| 11. | Officer McBride then observed Mr. Hernandez exit his truck and called out to her partner "Hey partner, he might be running." | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 2:38-2:48 |
| 12. | Officer Fuchigami was not paying attention, however, as he had stepped away from his partner, Officer McBride, and engaged the other drivers involved in the collision. | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 2:38-2:48 |
| 13. | Officer McBride yelled at Mr. Hernandez, "Hey man, let me see your hands.  Let me see your hands, man." | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 2:53 |
| 14. | Mr. Hernandez was holding a box cutter in his right hand and began walking toward Officer McBride. | Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 02:31-0:02:38. |
| 15. | Officer McBride claims she believed Mr. Hernandez was on drugs as he was sweating profusely, that he was furious, and that he was waving the knife around. | Gastélum Decl. at ¶ 3; Statement of Officer McBride to Force Investigation Division ("McBride Statement"), attached as Exhibit 2 at 36:1-8. |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| 16. | Officer McBride ordered Mr. Hernandez to, "Stay right there.  Drop the knife," while gesturing with her left hand to stop. | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 2:53. |
|---|---|---|
| 17. | Officer McBride moved to the rear of a nearby vehicle as Mr. Hernandez continued to walk towards her. | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 2:59. |
| 18. | Mr. Hernandez lifted his arms slightly from his sides and Officer McBride yelled, "Drop the knife!  Drop the knife!" | Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 02:59; Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:01. |
| 19. | Officer McBride then fired two rounds at Mr. Hernandez. | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:03. |
| 20. | At the moment she fired the initial two rounds, Mr. Hernandez was standing in the middle of the roadway facing Officer McBride at a distance from 41 to 44 feet and walking towards her with his arms extended out to his sides, not gesturing aggressively. | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:03; Gastélum Decl. at ¶ 9, Lantini Report, attached as Exhibit 8 at pg. 7. |
| 21. | After being struck by the first two shots, Mr. Hernandez fell to the ground, landing on his right shoulder. | Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 02:38; Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:03. |
| 22. | Officer McBride stated justification for the initial two rounds is contradicted by the evidence.  Officer McBride stated that Mr. Hernandez was walking at a "very, very fast pace" towards her.  While the video does show that Mr. Hernandez was walking towards Officer McBride, the video does not support her characterization that he was walking at a "very, very fast pace." | Gastélum Decl. at ¶ 3; McBride Statement, attached as Exhibit 2 at 41:16-25, 42:1-2; Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:03. |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| 23. | Officer McBride's justification for firing the first two rounds was that she believed it would be easy for Mr. Hernandez to close the distance quickly and that he could have killed her or a bystander. | Gastélum Decl. at ¶ 3; McBride Statement, attached as Exhibit 2 at 44:25, 45:2-21, 35:3-11,  15:2-25. |
|---|---|---|
| 24. | Officer McBride claims to have believed the distance between her and Mr. Hernandez was 15 feet. | Gastélum Decl. at ¶ 3; McBride Statement, attached as Exhibit 2 at 44:25, 45:1-3. |
| 25. | To the contrary, when Officer McBride fired the initial two rounds, Mr. Hernandez was 41 feet away from Officer McBride and 26 feet away from the closest citizen to Mr. Hernandez. | Gastélum Decl. at ¶ 8, Noble Report, attached as Exhibit 7 at pg. 15, parag. 44, pg. 12, parag. 32;  Gastélum Decl. at ¶ 9, Report prepared by Plaintiffs' Firearms Criminalist/Shooting Reconstruction Expert Lance Martini ("Lantini Report"), attached as Exhibit 8 at pg. 7. |
| 26. | The first round struck Mr. Hernandez's abdomen. | Gastélum Decl. at ¶ 10, Report prepared by Plaintiffs' Forensic Pathology Expert Jay Chapman, M.D. ("Chapman Report"), attached as Exhibit 9 at pg. 4, Opinion No. 4, subsect. a. |
| 27. | The second round initially struck Mr. Hernandez's left forearm then entered his abdomen causing a penetrating wound. | Gastélum Decl. at ¶ 10, Chapman Report, attached as Exhibit 9 at pg. 4, Opinion No. 4, subsect. b. |
| 28. | After the second round hit him, Mr. Hernandez fell to the pavement and began to raise his torso upward. | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:05. |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| 29. | Mr. Hernandez's knees came slightly off the ground, but his right hand which held the boxcutter was still on the ground when Officer McBride yelled, "Drop it," then fired an additional two more shots at Mr. Hernandez. | Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 02:41; Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:05. |
| --- | --- | --- |
| 30. | The third round struck Mr. Hernandez's thigh and he fell to the pavement again. | Gastélum Decl. at ¶ 10, Chapman Report, attached as Exhibit 9 at pg. 4, Opinion No. 4, subsect. c. |
| 31. | Officer McBride's fourth round was fired and struck Mr. Hernandez after he fell to the pavement. | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:03-03:05. |
| 32. | In fact, Mr. Hernandez was on his back on the pavement at the moment of the fourth shot was fired. | Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:05. |
| 33. | The fourth round struck Mr. Hernandez's shoulder, penetrating the lung and liver. | Gastélum Decl. at ¶ 10, Chapman Report, attached as Exhibit 9 at pg. 4, Opinion Nos., 2, 4, subsect. d. |
| 34. | By this point, Mr. Hernandez had collapsed to the pavement with his back towards Officer McBride when she fired the fifth round. | Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 02:42-02:02:43; Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:07. |
| 35. | The fifth round struck Mr. Hernandez's upper back. | Gastélum Decl. at ¶ 10, Chapman Report, attached as Exhibit 9 at pg. 4, Opinion No. 4, subsect. e. |
| 36. | Officer McBride fired the sixth and final shot at Mr. Hernandez's head as he was face down on the ground rolling to his left away from Officer McBride. | Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 02:44; Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| | | | at 3:07. |
|---|---|---|---|
| 37. | | This final round was the immediately fatal wound, causing Mr. Hernandez's death. | Gastélum Decl. at ¶ 10, Chapman Report, attached as Exhibit 9 at pg. 4, Opinion Nos. 1, 4, subsect. f. |
| 38. | | Officer McBride stated justification for the fifth and sixth rounds is contradicted by the evidence.  Officer McBride stated that after she fired the fourth shot, Mr. Hernandez fell back onto the ground "[b]ut then he was still getting back up.  He was already on all of his fours and was getting back up, and it looked like he was about to charge me with the knife, because he never let go of this knife.. . . he was already like on all fours about to pop up, it seemed.  And then that's when I fired another shot, and it struck the suspect.  I was aiming for his center body mass.  And then he immediately flipped over and was (unintelligible) again popped back up to come at me.  And that's when I fired my sixth shot." The video shows that Mr. Hernandez was on the ground and had his back toward Officer McBride at the moment of the fifth and sixth shots.  The video does *not* show Mr. Hernandez on all fours about to pop up prior to either the fifth or sixth shots. | Gastélum Decl. at ¶ 3; McBride Statement, attached as Exhibit 2 at 49:12-25; Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 02:44; Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 3:07. |
| 39. | | All of Officer McBride's rounds were fired in 6.18 seconds. | Gastélum Decl. at ¶ 9, Lantini Report, attached as Exhibit 8 at pgs. 4- 5. |
| 40. | | Mr. Hernandez was 41 to 44 feet from Officer McBride during all six shots. | Gastélum Decl. at ¶ 9, Lantini Report, attached as Exhibit 8 at pg. 7. |

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

| 41. | At no point during the six rounds did Officer McBride seek a position of cover. | Gastélum Decl. at ¶ 6; DICV, attached as Exhibit 5 at 02:31-02:44; Gastélum Decl. at ¶ 7, BWV, attached as Exhibit 6 at 2:48-3:07. |
|---|---|---|

Respectfully Submitted,

Dated: July 16, 2021

CASILLAS & ASSOCIATES

By: _Denisse O. Gastélum_

DENISSE O. GASTÉLUM

ARNOLDO CASILLAS
Attorneys for Plaintiffs, ESTATE OF DANIEL HERNANDEZ, by and through successors in interest, Manuel Hernandez and Maria Hernandez; MANUEL HERNANDEZ, individually; MARIA HERNANDEZ, individually

**PROOF OF SERVICE**

STATE OF CALIFORNIA                    }

CITY OF LOS ANGELES                   }

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 3777 Long Beach Boulevard, 3rd Floor, Long Beach, California 90807.

On July 16, 2021, I served, in the manner indicated below, the foregoing document described as:
**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

of the interested parties in this action by placing the true copies thereof enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Michael N. Feuer, City Attorney | **Attorney for Defendants** |
| Kathleen A. Kenealy, Chief Asst. City Attorney | **CITY OF LOS ANGELES & LAPD** |
| Scott Marcus, Chief, Civil Litigation Branch | Ph: (213) 978-7027 |
| Cory M. Brente, Senior Asst. City Attorney | Fx.: (213) 978-8785 |
| Colleen R. Smith, Deputy City Attorney | Email: colleen.smith@lacity.org |
| 200 North Main Street, 6th Floor, City Hall East | |
| Los Angeles, California 90012 | |
| | **Attorney for Defendant** |
| Kevin E. Gilbert, Esq. | **TONI MCBRIDE** |
| Nicholas D. Fine, Esq. | Ph: (510) 999-7908 |
| ORBACH HUFF SUAREZ + HENDERSON LLP | Fx: (510) 999-7918 |
| 6210 Stoneridge Mall Road, Suite 210 | Email: kgilbert@ohshlaw.com |
| Pleasanton, California 94588 | nfine@ohshlaw.com |
| | **Attorney for Plaintiff** |
| Narine Mkrtchyan, Esq. | **M.L.H. by and through GAL CLAUDIA** |
| MKRTCHYAN LAW | **SUGEY CHAVEZ** |
| 1010 N. Central Avenue, Suite 204 | Ph: (818)288-7022 |
| Glendale, California 91202 | Email: narine57@gmail.com |

( )    BY REGULAR MAIL: I caused such an envelope to be deposited in the United States mail at Long Beach, California, with postage thereon fully prepaid.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  It is deposited    with the United States Postal Service each day and that practice was followed in the ordinary course of business for the service here in attested to (C.C.P. §1013(a)(3)).

///

///

///

- 26 -

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**

(X )  BY ELECTRONIC SERVICE: I caused such document to be transmitted by electronic service to the email addresses provided above.

I declare that I am employed in the office of a member of the bar of this course whose direction the service was made.

Executed on this July 16, 2021 at Long Beach, California.

/s/ Leah Moreno
LEAH MORENO

**PLAINTIFFS' STATEMENT OF GENUINE DISPUTES**